## A00A1609. NORMAN ENTERPRISES INTERIOR DESIGN, INC. et al. v. DEKALB COUNTY.

(538 SE2d 130)

ELDRIDGE, Judge.

This case arises because of a fire which occurred at the DeKalb County Jail building on November 28, 1995, while appellants Norman Enterprises Interior Design, Inc. and Dorothea Norman (herein collectively referred to as "Norman Enterprises") were engaged in renovations on the interior of the building. As a result of the fire, DeKalb County sustained $204,362.24 in damages. DeKalb County received insurance payments from its insurer Northbrook Property & Casualty Insurance Company ("Northbrook") in the amount of $104,362.24, leaving an outstanding balance of $100,000 in uninsured losses. Subsequently, DeKalb County and Northbrook brought suit against Norman Enterprises in the State Court of DeKalb County alleging that Norman Enterprises' negligence was the proximate cause of the fire and seeking to recover the full amount of damages.

On January 17, 1998, Norman Enterprises filed an amended answer to DeKalb County's complaint and asserted OCGA § 33-36-3 (2) (F) as a personal defense. On February 27, 1998, DeKalb County filed a motion to strike Norman Enterprises' amended answer. On August 12, 1998, Northbrook dismissed its claim against Norman Enterprises with prejudice. At some point during the litigation, Norman Enterprises' insurer became insolvent, and on August 13, 1999, the Georgia Insurers Insolvency Pool ("GIIP"), although not joined as a party to the action, undertook the defense of Norman Enterprises.

Subsequently, the parties filed cross-motions for summary judgment asking the court to construe whether OCGA § 33-36-3 (2) (F) is available as a personal defense to an insured whose insurance carrier has become insolvent during the pendency of litigation. DeKalb County argued that such defense was available only to GIIP, while Norman Enterprises asserted that the defense was also available as a personal defense to the insured. Attached to the motions for summary judgment was a joint stipulation of the parties wherein the parties stipulated (1) that DeKalb County sustained $100,000 in damages from the fire of November 28, 1995; (2) that even though DeKalb County had disputed in the litigation that it was negligent, "in an effort to buy their peace and compromise and settle contested claims and to avoid the expense and uncertainty of further litigation,

[d]efendants specifically stipulate that their negligence was the proximate cause of [p]laintiff's damages"; (3) that the stipulation was subject to the "high-low agreement" and other terms set forth in the stipulation; (4) that the stipulation was for use in "this action only and [could] not be used against defendants in any other action"; (5) that Norman Enterprises' insurer became insolvent during the pendency of the lawsuit; and (6) that DeKalb County had a net worth of over $3 million at the time of the fire.

The parties also stipulated that the parties would submit the issue to the trial court by motion and waive the right to a jury trial and that the losing party would appeal the decision of the state court through the appellate courts of this State to a point "where a final decision is obtained regarding the application of the defense." The stipulation contained a "high-low agreement" where Norman Enterprises agreed to pay through coverage and indemnification provided by GIIP the sum of $20,000 as payment for settling the claim regardless of any court's decision and to pay an additional $60,000 through GIIP if the appellate courts decided the issue in favor of DeKalb County. The amount to be paid under the agreement would be either $20,000 or $80,000 and no amount in between. The parties also stipulated that any recovery against Norman Enterprises would be limited to amounts paid by GIIP and that DeKalb County would not be entitled to recover any amounts or enforce any judgment against Norman Enterprises. The stipulation was signed by the attorneys for DeKalb County, by the attorneys for Norman Enterprises, and by Dorothea Norman, individually and as president of Norman Enterprises. However, GIIP did not sign the agreement although it would be primarily liable and any appeal was for its benefit.

On December 21, 1999, the trial court entered an order striking Norman Enterprises' amended answer, denying Norman Enterprises' motion for summary judgment, granting DeKalb County's motion for summary judgment, and awarding judgment in favor of. DeKalb County in the amount of $100,000, plus court costs and post-judgment interest at the legal rate of 12 percent per annum. Because of a clerical error, Norman Enterprises did not receive notice of the judgment and missed the statutory time to appeal the decision. On February 11, 2000, the trial court set aside and reentered the December 21, 1999 judgment for the purpose of permitting Norman Enterprises to appeal. It is from this February 11, 2000 order that this appeal arises.

Norman Enterprises' sole enumeration of error is that the trial court erred in denying Norman Enterprises' motion for summary judgment and granting DeKalb County's motion for summary judgment and motion to strike Norman Enterprises' amended answer. Norman Enterprises argues that, since its insurer became insolvent

during the pendency of the litigation and DeKalb County had a net worth in excess of $3 million at the time of the insured event, OCGA § 33-36-3 (2) (F) provides it with a personal defense of up to $100,000[1] for DeKalb County's claim for damages.

1. The Georgia Insurers Insolvency Pool Act was enacted in 1970. Ga. L. 1970, p. 700, § 1. The purpose of such act is

> to provide a remedy for *covered claims* under property and casualty insurance policies when the insurer has become insolvent and is unable to perform its contractual obligations. . . . The pool shall be responsible for the investigation, adjustment, compromise, settlement, and payment of covered claims; for the investigation, handling, and denial of noncovered claims; and for the management and investment of funds administered by the pool.

(Emphasis supplied.) OCGA § 33-36-2. However, OCGA § 33-36-3 (2) (F) specifically provides that a "covered claim shall not include any obligation to insurers, insurance pools, underwriting associations, or any person which has a net worth greater than $3 million at the time of the insured event." The question that must be decided by this Court, therefore, is whether the defense set forth in OCGA § 33-36-3 (2) (F), which is available to GIIP, can be asserted by the insured whose insurer has been declared insolvent and whose defense is being maintained by GIIP, when GIIP has not been made a party to the action.

Every insurer authorized to write property or casualty insurance policies in this state is required to be a member of the insolvency pool. OCGA § 33-36-5.

> In the event an insurer is determined to be insolvent, the coverage afforded by property and casualty insurance policies issued by such insurer shall, with respect to covered claims, become the obligation of the pool for a period of 30 days from the date of such determination or until policy expiration date if less than said 30 days or until the policy has been replaced by the insurer within said 30 days. The pool shall be deemed to be the insurer for such period with respect and to the extent of the claims with all the rights, duties, and obligations of the insolvent insurer; and the pool is authorized to investigate, adjust, compromise, and settle

---

[1] OCGA § 33-36-3 (2) (D) provides that a "covered claim shall not include that portion of any first-party claim which is in excess of the applicable limits provided in the policy or $100,000.00, whichever is less."

covered claims or to investigate, handle, and deny noncovered claims.

OCGA § 33-36-9. Hence, it is clear that under the Georgia Insurers Insolvency Pool Act when an insurer becomes insolvent, GIIP must "fulfill the insurer's obligations to the insured." *United States v. Rutland*, 849 FSupp. 806, 811 (S.D. Ga. 1994).

> These obligations, however, are not unlimited. They are defined by the insurance contract between the insured and its now insolvent insurer, e.g., *Colwell v. Voyager Cas. Ins. Co.*, 184 Ga. App. 842, 363 SE2d 310 (1987), and they are further limited by operation of the Act, e.g., OCGA § 33-36-3; *Claxton Mfg. Co. v. Hodges*, 201 Ga. App. 371, 372, 411 SE2d 109 (1991). In other words, GIIP stands in the shoes of the insolvent insurer to the extent of the insurance contract and the limitations of the Act. . . . From this role definition, it is reasonable to presume that GIIP's relationship to its insured and other claimants is similar (although perhaps not identical) to that of regular insurance companies. It is axiomatic that under normal circumstances, a defendant's tort liability is not contingent upon its insurance coverage. Indeed, insurance is a non-issue. Thus, if, for whatever reason, a defendant's insurance company has a contractual defense that would absolve it from having to pay a particular judgment, that defendant cannot assert the defense as a substantive bar to the tort action against it. Moreover, in the event that a judgment is entered against a defendant, the fact that the defendant's insurer has a contractual defense that absolves it of liability does not absolve the defendant of its liability to the plaintiff.

Id. at 811.

The defense set forth in OCGA § 33-36-3 (2) (F) is not a defense to the merits of an action, but only limits the assets available from GIIP to satisfy a judgment. The fact that GIIP may have a defense to a future claim that a judgment creditor may make against GIIP does not absolve Norman Enterprises of its liability to DeKalb County. Hence, the defense set forth in OCGA § 33-36-3 (2) (F) is applicable only to GIIP as a valid statutory defense, and Norman Enterprises cannot assert such defense to create a substantive bar to DeKalb County's claim against it. This analysis is consistent with previous decisions of this Court where we have rejected the notion that OCGA

§ 33-36-14 (a),[2] a defense available to GIIP when a plaintiff has purportedly failed to exhaust uninsured motorist coverage benefits, is a personal defense available to a defendant. See *Grigsby v. White*, 228 Ga. App. 682 (492 SE2d 603) (1997); *Reid v. U. S. Fidelity &c. Co.*, 223 Ga. App. 204 (477 SE2d 369) (1996); *Lee v. Fulton Concrete Co.*, 195 Ga. App. 348 (393 SE2d 449) (1990).

Therefore, the trial court did not err in granting DeKalb County's motion to strike Norman Enterprises' amended answer which asserted the defense of OCGA § 33-36-3 (2) (F).

2. However, the trial court erred in granting summary judgment in favor of DeKalb County and entering judgment in its favor.

(a) When the trial court struck Norman Enterprises' amended answer, such defense was no longer viable before the trial court and became moot. "The effect of the state court's order striking the [amended] answer was to remove [that defense]." (Citation and punctuation omitted.) *Jordan v. Atlanta Neighborhood Housing Svcs.*, 169 Ga. App. 600 (2) (313 SE2d 787) (1984). Therefore, the defense was no longer before the trial court for consideration on motion for summary judgment.

(b) Further, the joint stipulation and contingent settlement agreement upon which the trial court based the grant of summary judgment is against public policy and is void under OCGA § 13-8-2.

(i) GIIP is not a party to this action. The only parties which have signed the joint stipulation and contingent settlement agreement are plaintiff and defendants, and, from the record, counsel for Norman Enterprises had no apparent authority to act on behalf of GIIP. Yet, the joint stipulation and contingent settlement agreement seeks to bind GIIP to pay either $20,000 or $80,000, depending on the courts' interpretation of Norman Enterprises' right to assert OCGA § 33-36-3 (2) (F) as a personal defense and seeks to prohibit DeKalb County or its agents or assigns from recovering any amount or enforcing any judgment against Norman Enterprises and Dorothea Norman. Such agreement, if upheld, would prevent GIIP, which is not a party to the action and has not agreed to be bound by the stipulation and agreement, from asserting the defense set forth in OCGA § 33-36-3 (2) (F); would allow DeKalb County to recover directly from GIIP, even

---

[2] OCGA § 33-36-14 (a) provides that

[a]ny person, including any individual, partnership, association, or corporation, having a claim against a policy or an insured under a policy issued by an insolvent insurer, which claim is a covered claim and is also a claim within the coverage of any policy issued by a solvent insurer, shall be required to exhaust first his rights under such policy issued by the solvent insurer. The policy of the solvent insurer shall be treated as primary coverage and the policy of the insolvent insurer shall be treated as secondary coverage and his rights to recover such claim under this chapter shall be reduced by any amounts received from the solvent insurers.

though DeKalb County's assets at the time of the insured event were in excess of $3 million; and would frustrate the intent of the legislature in enacting the Georgia Insurers Insolvency Pool Act, which was "to provide this remedy to certain groups or 'persons' and exclude others with very large financial resources." *Ga. Insurers Insolvency Pool v. Elbert County*, 258 Ga. 317, 319 (2) (368 SE2d 500) (1988). This would deplete the insolvency pool by paying a claim specifically barred by statute.

(ii) Additionally, the joint stipulation and settlement agreement seeks to obtain an advisory opinion where the rights of the parties have already accrued. The trial court lacks subject matter jurisdiction to render such an opinion, as does this Court.

> [T]here is no question that a trial court [or an appellate court] cannot issue advisory opinions. Throughout Article VI of the Georgia Constitution, jurisdictional authority is given over cases. Cases are live disputes, actual controversies. Not even in a declaratory judgment action is the court permitted to render an advisory opinion. The Declaratory Judgment Act itself makes that plain, by allowing only in cases of actual controversy what otherwise might be considered advisory opinions.[3]

(Citations, punctuation and footnotes omitted.) *In the Interest of I. B.*, 219 Ga. App. 268, 269 (464 SE2d 865) (1995) (physical precedent only); see also *McDowell v. Judges ex Officio*, 235 Ga. 364, 365 (219 SE2d 713) (1975); *Vann v. Billingsley*, 234 Ga. App. 803, 805 (508 SE2d 180) (1998); *Chambers of Ga. v. Dept. of Nat. Resources*, 232 Ga. App. 632, 634 (502 SE2d 553) (1998). The parties cannot do indirectly through the use of the joint stipulation and contingent settlement agreement what they could not do directly, i.e., obtain an advisory opinion from both the trial and appellate courts. Therefore, the joint stipulation and contingent settlement agreement is null and void ab initio as contrary to public policy as an illegal contract to circumvent the statutory and constitutional powers of the courts and to procure what the courts have no inherent power to render, an advisory opinion.

Because the dismissal of Norman Enterprises' amended answer made the Norman Enterprises' assertion of OCGA § 33-36-3 (2) (F) as a personal defense moot and because the joint stipulation and contingent settlement agreement was void ab initio, this Court vacates the

---

[3] This action was not brought as a declaratory judgment action, and to construe it as such would deprive the state court of subject matter jurisdiction. See OCGA § 15-7-4 (2); *Mitchell v. Southern Gen. Ins. Co.*, 185 Ga. App. 870, 871 (366 SE2d 179) (1988).

grant of summary judgment and entry of judgment in favor of DeKalb County.

3. Furthermore, in view of our holding in Divisions 1 and 2, Norman Enterprises was not entitled to a grant of summary judgment, and there was no error in the trial court denying Norman Enterprises' motion.

*Judgment affirmed in part and vacated in part. Blackburn, P. J., and Barnes, J., concur.*

DECIDED AUGUST 4, 2000 — RECONSIDERATIONS DENIED AUGUST 15, 2000 

*Gorby, Reeves, Peters & Burns, Michael J. Gorby, James W. Standard, Jr.*, for appellants.

*Webb, Carlock, Copeland, Semler & Stair, Edward A. Miller, Jerome B. McNally*, for appellee.