## A01A2429. CONEX FREIGHT SYSTEMS, INC. v. GEORGIA INSURANCE INSOLVENCY POOL.
### (561 SE2d 221)

RUFFIN, Judge.

Conex Freight Systems, Inc. ("Conex") appeals from the trial court's order granting summary judgment to the Georgia Insurers Insolvency Pool ("the Pool") in this declaratory judgment action. For reasons that follow, we reverse.

Summary judgment is appropriate "when there is no genuine issue of material fact and the movant is entitled to judgment as a

---

matter of law."[1] Applying a de novo standard of review, "we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[2] Viewed in this light, the evidence shows that Conex is a California trucking and warehousing corporation that has its corporate headquarters in California, but operates a facility in Atlanta. On June 22, 1998, Steven and Brenda Rohland sued Conex for injuries allegedly sustained in Georgia when a truck owned and driven by an independent contractor hired by Conex's Atlanta facility collided with Steven Rohland's truck.

The record shows that Georgia General Insurance Company provided liability insurance coverage to Conex's Atlanta facility under a commercial automobile insurance policy. At some point, however, that insurance company became "insolvent," as defined by the Georgia Insurers Insolvency Pool Act ("the Act"),[3] and Conex sought coverage under the Act. Although the Pool undertook Conex's defense in the Rohland suit, it reserved the right to challenge coverage. The Pool subsequently filed this declaratory judgment action, asserting that the Act did not require it to defend or indemnify Conex. The trial court agreed and granted the Pool summary judgment, and this appeal ensued.

1. The Act provides "a remedy for covered claims under property and casualty insurance policies when the insurer has become insolvent and is unable to perform its contractual obligations."[4] If an insurer becomes insolvent, the Pool "must fulfill the insurer's obligations to the insured" for covered claims.[5] To be "covered" under the Act, a claim must meet two requirements. First, it must arise out of a property or casualty insurance policy issued by an insurer authorized to do insurance business in Georgia.[6] Second, it must fall within "any of [five] classes of claims" identified in OCGA § 33-36-3 (2) (B).[7] This appeal focuses on the second requirement.

(a) The five classes of claims identified in OCGA § 33-36-3 (2) (B) include a claim that "arises out of an insurable event under a property or casualty insurance policy and . . . is . . . [t]he claim of a policyholder or insured who at the time of the insured event was a resi-

---

[1] *Dover v. Mathis*, 249 Ga. App. 753 (549 SE2d 541) (2001).

[2] Id.

[3] OCGA § 33-36-1 et seq.

[4] OCGA § 33-36-2.

[5] (Punctuation omitted.) *Norman Enterprises Interior Design v. DeKalb County*, 245 Ga. App. 538, 541 (1) (538 SE2d 130) (2000).

[6] OCGA § 33-36-3 (2) (A) (i); see also OCGA §§ 33-36-3 (7); 33-7-3 ("casualty insurance" includes vehicle insurance under OCGA § 33-7-9).

[7] OCGA § 33-36-3 (2) (A) (ii).

dent of this state."[8] Conex argues that it falls within this provision because it is a Georgia resident. Rejecting this argument, the trial court deemed Conex a resident of California, where it is incorporated and has its principal place of business. On appeal, Conex does not deny California residency, but also claims Georgia residency because it is qualified to do and does business here. According to Conex, an insured can have multiple states of residence under the Act.

The Act does not define "resident." Seeking to place itself within the term, Conex argues that, in other contexts, a corporation can be a resident of more than one state, including a state in which it merely transacts business. Under Georgia's long arm statute, for example, a foreign corporation authorized to do or transact business in this state is a Georgia resident for purposes of personal jurisdiction.[9] We have noted also that "a person may have several residences which are not necessarily permanent or in the same locale as [his or her] domicile."[10] Those interpretations of the term "resident," however, are not definitive. Rather, we must construe the various provisions of the Act to determine what the legislature intended when it included that term in the Act. As we have explained,

> [a] statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes in pari materia, are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto.[11]

Construed as a whole, the Act does not support Conex's claim that OCGA § 33-36-3 (2) (B) (iii) permits multiple states of residency. Indeed, the legislature's use of the term "resident" elsewhere in the statutory scheme evidences a contrary meaning. Specifically, in OCGA § 33-36-10 (a), the legislature prohibited "duplicate recoveries of covered claims under [the Act] and an insolvency fund or its equivalent of any other state." To prevent such double recovery, the Act provides that, for the type of claim involved in this case, "the *sole* recovery . . . shall be under the insolvency fund or its equivalent of

---

[8] OCGA § 33-36-3 (2) (B) (iii).

[9] See *Allstate Ins. Co. v. Klein*, 262 Ga. 599, 601 (422 SE2d 863) (1992); OCGA § 9-10-90; see also OCGA § 14-2-140 (10) (defining "foreign corporation" as "a corporation for profit incorporated under a law other than the law of this state").

[10] *Cooper v. Edwards*, 235 Ga. App. 48, 50 (508 SE2d 708) (1998).

[11] (Punctuation omitted.) *City of Buchanan v. Pope*, 222 Ga. App. 716, 717 (1) (476 SE2d 53) (1996); see also *Cherokee Warehouses v. Babb Lumber Co.*, 244 Ga. App. 197, 198 (535 SE2d 254) (2000) ("In construing statutes, a court must 'give meaning to and harmonize all parts of the statute to give them sensible and intelligent effect, while avoiding constructions that make any part of the statute mere surplusage.' ").

*the state of residence* of the insured."[12] The statute's clear terms refer to only one "state of residence."[13] Furthermore, permitting multiple residences could lead to multiple recoveries, as insureds seek recovery in their various *states* of residence. Conex's argument reduces the duplicate recovery prohibition to mere surplusage, violating basic rules of statutory construction.[14]

Other jurisdictions interpreting comparable legislation have construed the residency requirement in this way. The Iowa Supreme Court, for example, found that "a corporation has only one residence" for purposes of insurer insolvency legislation, in part because the statutory scheme "appears to recognize only one residence for an insured by requiring an insured having a claim against more than one insurance guaranty association to first seek recovery from its state of residence."[15] Like the Iowa Supreme Court, we find that Conex has only one residence under the Act.[16]

The record further shows that Georgia is not Conex's one "state of residence." Without dispute, Conex is a California corporation with its principal place of business in that state. We recognize that Conex is authorized to do and does business here. Many corporations, however, are authorized to do business and operate facilities in multiple states. Allowing a corporation to establish residency under the Act simply by transacting business in a state could lead to numerous states of residency, undermining the single residency requirement.

Other jurisdictions differ on whether residency stems from a corporation's state of incorporation or its principal place of business.[17] We need not address this issue, however, because Conex is not a Georgia corporation and does not have its principal place of business in this state. And "[w]e have been cited to no authority indicating

---

[12] (Emphasis supplied.) OCGA § 33-36-10 (a) (3); see also OCGA § 33-36-10 (a) (1) ("[T]he sole recovery . . . with respect to a workers' compensation claim[ ] shall be under the insolvency fund or its equivalent of *the state of residence* of the claimant.") (emphasis supplied).

[13] See OCGA § 33-36-10 (a); see also *Kendall v. Griffin-Spalding County Hosp. Auth.*, 242 Ga. App. 821, 822 (2) (531 SE2d 396) (2000) (statutes "should be read according to the natural and most obvious import of the language, without resorting to subtle and forced constructions to limit or extend their operation").

[14] See *Cherokee Warehouses*, supra.

[15] *Kroblin Refrigerated Xpress v. Iowa Ins. Guaranty Assn.*, 461 NW2d 175, 179 (I) (Iowa 1990). Conex argues that any reliance on *Kroblin Refrigerated* is misplaced because the Iowa statute, as amended, defined the term "resident." The Iowa court explained, however, that the claim at issue arose before the legislature adopted the definition and that the amendment did not help determine the unamended statute's meaning. Id. at 178.

[16] See also *Wyoming Ins. Guaranty Assn. v. Woods*, 888 P2d 192, 199 (III) (Wyo. 1994) ("As used in the [Wyoming Insurance Guaranty Association Act], 'place of residence' is a term of art that designates a single locality.").

[17] Compare *Kroblin Refrigerated*, supra (principal place of business), and *Woods*, supra (same), with *Alabama Ins. Guaranty Assn. v. Colonial Freight Systems*, 537 S2d 475, 476 (Ala. 1988) (state of incorporation).

that a corporation which is incorporated in state A and which has its principal place of business in state B is to be considered a resident of state C in the context of an insurance guaranty fund."[18] Conex cannot claim Georgia as its one "state of residence" under the Act merely by transacting business or maintaining a facility here.[19] It follows that the trial court properly rejected Conex's residency claim under OCGA § 33-36-3 (2) (B) (iii).

(b) Nevertheless, we agree with Conex that the trial court erred in granting the Pool summary judgment. Under OCGA § 33-36-3 (2) (B) (iv), the term "covered claims" includes a claim that "arises out of an insurable event under a property or casualty insurance policy and . . . is . . . [t]he claim of a person having an insurable interest in or related to property which was permanently situated in this state."[20] From the beginning of this litigation, Conex has not only sought coverage under the residency provision, but has claimed an insurable interest in property permanently located in Georgia.

On appeal, the Pool argues that this "insurable interest in property" coverage applies only to "first-party claims for damage to or destruction of [the] property," not to liability claims. According to the Pool, a liability claim falls within the Act only if the claimant meets the residency requirement. The Act, however, specifically defines "covered claims" as those "within *any* of the [five] classes of claims under [OCGA § 33-36-3 (2) (B)]."[21] The "insurable interest in property" provision is the fourth of these five classes, and nothing in the statutory language restricts the fourth class to property insurance claims.[22] A claim within this class can arise under a property *or* casualty insurance policy.[23] The Act thus covers nonresident claimants having sufficient Georgia ties to hold an insurable interest in property permanently located here.

An "insurable interest" is "[a] legal interest in . . . the protection of property from injury, loss, destruction, or pecuniary damage."[24] To

---

[18] *Douglass v. Levi Strauss & Co.*, 315 Ark. 380, 385 (2) (868 SW2d 70) (1993).

[19] See id.; see also *Trans Louisiana Gas Co. v. Louisiana Ins. Guaranty Assn.*, 652 S2d 686, 691 (La. App. 1995) ("[I]t is not necessary to decide . . . whether place of incorporation, principal place of business, or an analysis of both should control residency because [the company] does not meet any of the tests. . . . [W]e believe that the legislature certainly did not mean to include within the definition of resident a foreign corporation, with its principal place of business out of [this state], that does business through subsidiaries or operating divisions in other states, merely because it also does substantial business in [this state].").

[20] See also OCGA § 33-1-2 (5) (the term "person" includes corporations).

[21] (Emphasis supplied.) OCGA § 33-36-3 (2) (A) (ii).

[22] Cf. OCGA § 33-36-3 (2) (B) (ii) (second class of covered claims restricted to unearned premium claims of policyholder "under a policy affording coverage for property permanently situated in this state"); OCGA § 33-36-3 (2) (B) (v) (fifth class of covered claims restricted to claims under "a liability or workers' compensation insurance policy").

[23] See OCGA § 33-36-3 (2) (B) (iv).

[24] Black's Law Dictionary (7th ed. 1999), p. 816.

identify an insurable interest, we consider whether the party claiming the interest "has such a right, title, or interest therein, or relation thereto, that he will be benefitted by its preservation and continued existence, or suffer a direct pecuniary loss from its destruction or injury."[25] Thus, "[w]hile title may not always be the determinative fact, the insured must have some *lawful* interest in property before he can have an insurable interest in the property, although that interest may be 'slight or contingent, legal or equitable.' "[26] Under Georgia law, a lessee has such an insurable interest in leased property.[27]

As noted by the trial court, Conex leased its Atlanta facility, which Conex's president described as 2,500 square feet of office space, 10,000 square feet of warehouse space, and six acres of land. This lease interest provides evidence that Conex had "an insurable interest in . . . property which was permanently situated in this state."[28] Accordingly, the trial court erred in finding, as a matter of law, that Conex was not entitled to coverage under the Act.

2. Our decision in Division 1 renders Conex's remaining enumeration of error moot.

*Judgment reversed. Johnson, P. J., and Ellington, J., concur.*

DECIDED MARCH 1, 2002 —

*Kaufman, Chaiken, Miller & Klorfein, Fredric Chaiken*, for appellant.

*Gorby & Reeves, Blakely H. Frye*, for appellee.

[25] *Brown v. Ohio Cas. Ins. Co.*, 239 Ga. App. 251, 253 (2) (519 SE2d 726) (1999); see also OCGA § 33-24-4 (a).

[26] (Citations omitted; emphasis in original.) *Splish Splash Waterslides v. Cherokee Ins. Co.*, 167 Ga. App. 589, 591 (2) (307 SE2d 107) (1983).

[27] See *Townsend v. Morris*, 222 Ga. 242, 243 (1) (149 SE2d 464) (1966); *New Jersey Ins. Co. v. Rowell*, 157 Ga. 360 (121 SE 414) (1924); see also *Splish Splash*, supra at 592 (2) (party claiming to be real estate lessee through assignment "can claim no insurable interest in the realty . . . unless [the] lease was effectively assigned").

