[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 2, 2006
THOMAS K. KAHN
CLERK

No. 05-17184

D.C. Docket No. 03-00247-CV-WDO-5

FEDERATED RURAL ELECTRIC
INSURANCE EXCHANGE,

Plaintiff-Appellee,
Cross-Appellant,

versus

R. D. MOODY & ASSOCIATES, INC.
and MASTEC NORTH AMERICA, INC.,

Defendants-Appellants,
Cross-Appellees.

Appeals from the United States District Court
for the Middle District of Georgia

**(November 2, 2006)**

Before BLACK and HULL, Circuit Judges, and CONWAY,[*] District Judge.

PER CURIAM:

Plaintiff Federated Rural Electric Insurance Exchange ("Federated") and Defendants MasTec North America, Inc. ("MasTec") and R. D. Moody & Associates, Inc. ("Moody") appeal a summary judgment ruling issued in this subrogation case. Federated challenges the district court's determination that Federated's subrogation claim is barred, at least in part, by the Florida Insurance Guaranty Association Act ("FIGA"), Fla. Stat. §§ 631.50-.70. In turn, Moody and MasTec appeal the district court's suggestion that FIGA may not preclude Federated from recovering the portion of Federated's damages that exceeds the amount of Moody and MasTec's liability insurance coverage. We conclude that Georgia law controls this dispute and the district court erred in applying Florida law.

## I. BACKGROUND

This lawsuit arises from an electrical accident that occurred in Washington County, Georgia. In May 2000, Thomas Smith was seriously injured when he contacted a downed power line owned by Washington

[*]The Honorable Anne C. Conway, U.S. District Judge for the Middle District of Florida, sitting by designation.

Electric Membership Corporation ("WEMC"), a Georgia corporation, and constructed by Moody, a now-dissolved Florida corporation. MasTec, also a Florida company, is Moody's successor-in-interest by virtue of a merger that occurred in 1998.

Ultimately, Smith succumbed to his injuries. His surviving spouse brought a personal injury/wrongful death suit against WEMC and an engineering firm. Eventually, that case settled. Federated, WEMC's insurer, paid Smith's widow $6,500,000; the engineering firm paid $500,000. Moody did not participate in the settlement.

In July 2003, WEMC commenced the present action seeking indemnity and contribution from Moody and MasTec, on the asserted basis that Moody negligently constructed the power lines and utility poles involved in the accident. In early April 2005, Federated was substituted, by consent, for WEMC as the plaintiff in this suit, based on the fact that WEMC had assigned to Federated the former's right to seek recovery against Moody and MasTec. A few days following Federated's substitution, Moody and MasTec filed papers raising FIGA as a defense. Essentially, Moody and MasTec took the position that because Federated is a member of FIGA, and Moody and MasTec's insurer, Reliance Insurance Company

("Reliance"), is both a FIGA member and insolvent, Fla. Stat. § 631.54 bars Federated's claims. Section 631.54(3)(b) provides that "[m]ember insurers shall have no right of subrogation, contribution, indemnification, or otherwise, sought directly or indirectly through a third party, against the insured of any insolvent member."[1] It is undisputed that both Federated and Reliance are FIGA members.

Thereafter, Moody and MasTec filed a motion for summary judgment, which included the FIGA argument. Federated countered that Georgia, not Florida, law applied and that its subrogation claim was permitted under Georgia law. Alternatively, Federated asserted that if Florida law did control, Moody and MasTec had waived the FIGA defense by not raising it in a timely manner.

The district court entered an order granting MasTec and Moody's motion for summary judgment on the basis of the FIGA defense. See Federated Rural Elec. Ins. Exch. v. R.D. Moody & Assocs., Inc., 391 F. Supp. 2d 1228 (M.D. Ga. 2005). After acknowledging that he was bound to apply Georgia's choice of law rules in this diversity case, the district judge

---

[1]Prior to its amendment in 2004, § 631.54(3)(b) provided that member insurers had "no right of subrogation against the insured of any insolvent member."

4

proceeded to discuss those rules.  Id. at 1230-31.  Then, without explicitly

stating why Florida law applied, the district court determined that

Federated's subrogation claim was a "covered claim" under FIGA and it

was barred by Fla. Stat. § 631.54(3)(b).  Id. at 1231-32.  The district court

also found that FIGA and Georgia's counterpart law, the Georgia Insurers

Insolvency Pool Act, O.C.G.A. §§ 33-36-1 to -19 ("GIIP"), did not differ in

any way that application of FIGA would violate Georgia public policy.  Id.

at 1232.  In fact, the district court stated:  "Georgia's insolvency statute

contains its own choice of law provision which provides that the sole

recovery for claims other than those for workers' compensation or

destruction of property 'shall be under the insolvency fund or its equivalent

of the state of residence of the insured.'" Id. (quoting O.C.G.A. § 33-36-

10(a)(3)).  "In this case," stated the district court, "that would be the State of

Florida."  Id.  The district court thus concluded that FIGA prevented

Federated from suing Moody and MasTec.  Id.  The court also determined

that any claim by Federated against the insolvency pool itself would be

time-barred under Florida's one-year statute of limitations applicable to

such claims.  Id.

The district court then discussed several Florida appellate opinions and concluded that it was "not entirely clear" whether FIGA barred Federated's subrogation claim in toto, or whether, instead, Federated could pursue that portion of its claim that exceeded the liability limits of the Reliance policy. Id. at 1232-33. Accordingly, the court granted Moody and MasTec's summary judgment motion "as to the applicability of FIGA," but also made findings pursuant to 28 U.S.C. § 1292(b) so that the parties could request interlocutory appellate review of the summary judgment order. Id. at 1233. This appeal ensued.

## II. STANDARD OF REVIEW

Grants of summary judgment and choice of law determinations are both subject to de novo review. Brooks v. County Comm'n of Jefferson County, Ala., 446 F.3d 1160, 1161-62 (11th Cir. 2006) (summary judgment); LaFarge Corp. v. Travelers Indem. Co., 118 F.3d 1511, 1514-15 (11th Cir. 1997) (summary judgment involving choice of law ruling).

## III. DISCUSSION

A. Choice of Law

This appeal turns on the choice-of-law issue: does Georgia substantive law control, or does Florida law apply?

In a case founded on diversity jurisdiction, the district court must apply the forum state's choice of law rules. McGow v. McCurry, 412 F.3d 1207, 1217 (11th Cir. 2005). Neither side disputes this proposition. In this case, the forum state is, of course, Georgia.

Under Georgia law,

> [t]he traditional method of resolving choice-of-law issues is through a tripartite set of rules, which are lex loci contractus, lex loci delicti, and lex fori. Under the rule of lex loci contractus, the validity, nature, construction, and interpretation of a contract are governed by the substantive law of the state where the contract was made, except that where the contract is made in one state and is to be performed in another state, the substantive law of the state where the contract is performed will apply. General Elec. Credit Corp. v. Home Indem. Co., 168 Ga. App. 344, 349 [], 309 S.E.2d 152[, 157] ([Ga. App.] 1983). Under the rule of lex loci delicti, tort cases are governed by the substantive law of the state where the tort was committed. Ohio Southern Express Co. v. Beeler, 110 Ga. App. 867, 868 [], 140 S.E.2d 235[, 236] ([Ga. App.] 1965). Under the rule of lex fori, procedural or remedial questions are governed by the law of the forum, the state in which the action is brought. Menendez v. Perishable Distrib[s]., 254 Ga. 300, [302,] 329 S.E.2d 149[, 151] ([Ga.] 1985), [abrogated on other grounds by Posey v. Medical Center-West, Inc., 257 Ga. 55, 354 S.E.2d 417 (Ga. 1987)].

7

Fed. Ins. Co. v. Nat'l Distrib. Co., Inc., 203 Ga. App. 763, 765, 417 S.E.2d 671, 673 (Ga. App. 1992) (alterations added).

Since this case does not involve a procedural or remedial question, lex fori is not implicated. This narrows the choices to lex loci contractus and lex loci delicti.

Moody and MasTec urge application of the lex loci contractus rule based on the liability insurance policy issued by Reliance. Since that policy was delivered in Florida, it is considered "made" in that state. Fed. Ins. Co., 203 Ga. App. at 767, 417 S.E.2d at 674-675. We reject this argument. Federated's subrogation claim against Moody and MasTec cannot fairly be characterized as an action based on that insurance contract. While the policy might ultimately provide a source of funds to satisfy any judgment obtained against Moody and/or MasTec, Federated is not suing to recover for breach of that contract. Moreover, the terms of the Reliance policy are not in dispute, and this case does not otherwise involve the validity, nature, construction, or interpretation of that insurance contract.

The same can be said of the contracts between WEMC and Moody, under which Moody constructed the power line involved in the accident. Federated has not sued for breach of these contracts, either. Instead,

Federated's subrogation claim seeks indemnity and contribution based on Moody's alleged negligence. Accordingly, the lex loci contractus doctrine does not apply.

We conclude that Federation's subrogation claim sounds in tort. To succeed on that claim, Federated must prove that Moody was negligent. A subrogation claim arising from a tort committed in Georgia is properly characterized as a tort claim for choice of law purposes, thereby mandating application of the lex loci delecti rule. Swain v. D & R Transp. Co., 735 F. Supp. 425, 427-428 (M.D. Ga. 1990). Because the underlying tort occurred in Georgia, the substantive law of that state governs Federated's subrogation claim. The district court thus erred in applying Florida law.

B. Georgia Substantive Law

The remaining question is whether Georgia law permits an insurer to bring a subrogation claim against the tortfeasor-insured of an insolvent insurer. To answer that question, we first examine Georgia's own insolvent insurer scheme.

GIIP contains no analogue to FIGA's provision barring a member insurer from suing the insured of an insolvent member insurer. The closest GIIP comes is O.C.G.A. § 33-36-6(e), which provides, in pertinent part:

9

"The pool as a legal entity and any of its individual members shall have no cause of action against the insured of the insolvent insurer for any sums it has paid out except such causes of action as the insolvent insurer would have had if such sums had been paid by the insolvent insurer and except as otherwise provided in this chapter." § 33-36-6(e) (emphasis added). This provision has no apparent application to the present dispute, since there is no indication that Georgia's insolvency pool has paid out any sums on behalf of Moody, MasTec or Reliance. Indeed, there is no suggestion that any claim relevant to this case has been made against Georgia's insolvent insurer pool.

More fundamentally, GIIP does not apply in this case because Federated's subrogation claim is not a "covered claim" under the Act. Section 33-36-3(4) provides, in pertinent part:

> (A) "Covered claim" means an unpaid claim which:
>
> (i) Arises out of a property or casualty insurance policy issued by an insurer which becomes an insolvent insurer which was authorized to do an insurance business in this state either at the time

10

the policy was issued or when the insured event occurred;[2] and

(ii) Is within any of the classes of claims under subparagraph (B) of this paragraph.

(B) A claim shall not be paid unless it arises out of an insurable event under a property or casualty insurance policy and it is:

(i) An unearned premium claim of a policyholder who at the time of the insolvency was a resident of this state;
(ii) An unearned premium claim of a policyholder under a policy affording coverage for property permanently situated in this state;
(iii) The claim of a policyholder or insured who at the time of the insured event was a resident of this state;
(iv) The claim of a person having an insurable interest in or related to property which was permanently situated in this state; or
(v) A claim under a liability or workers' compensation insurance policy when either the insured or third-party claimant was a resident of this state at the time of the insured event.

§ 33-36-3(4)(footnote added).

Federated's claim does not fit within any of the five classes of claims set forth in § 33-36-3(4)(B)(i)-(v). Plainly, subsections (i), (ii) and (iv) do not apply. Subsection (iii) also does not apply because the policyholders

_____

[2]It is unclear whether Reliance was authorized to conduct insurance business in the State of Georgia. For analytical purposes, we will assume that it was.

11

and insureds to whom the statute refers are Moody and MasTec, and they were not Georgia residents when the accident occurred. Finally, although Federated's subrogation claim may be a claim under a liability insurance policy, subsection (v) is inapplicable because neither the "insured" (Moody/MasTec) nor the "third-party claimant"(Federated) were Georgia residents at the time of the accident.[3] For these reasons, we conclude that Federated's subrogation claim is not a "covered claim" under GIIP.

Moreover, even if Federated's claim were covered by GIIP, any statutory objections the pool might raise against such a claim are unavailable to Moody and MasTec. "[T]he mere fact that one of the prerequisites to recovery under the Act is not satisfied does not create a 'personal defense so as to bar [the claimant's tort case]'against a defendant other than GIIP." United States v. Rutland, Inc., 849 F. Supp. 806, 812 (S.D. Ga. 1994) (alteration added) (quoting Lee v. Fulton Concrete Co., 195 Ga. App. 348, 349, 393 S.E.2d 449, 450 (Ga. App. 1990)). This is

---

[3]One might argue that § 33-36-3(4)(B)(v) applies because Federated stands in WEMC's shoes as a subrogee, and since WEMC resided in Georgia at the time of the accident, Federated's third-party claim is transformed into that of a Georgia resident. However, that argument has not been presented to us. In any event, such an argument appears foreclosed by Conex Freight Sys., Inc. v. Ga. Ins. Insolvency Pool, 254 Ga. App. 92, 561 S.E.2d 221 (Ga. App. 2002), which held that the "resident of this state" language in GIIP does not permit multiple states of residency.

consistent with the "axiomatic" Georgia rule that "under normal circumstances, a defendant's tort liability is not contingent upon its insurance coverage[;] . . . insurance is a non-issue." Id. at 811.

Before leaving GIIP, we address O.C.G.A. § 33-36-10(a), which the district court and Moody/MasTec have characterized as a choice of law provision. Section § 33-36-10(a) states:

> It is not the purpose of this chapter to provide or permit duplicate recoveries of covered claims under this chapter and an insolvency fund or its equivalent of any other state. In the construction and application of this chapter with respect to a covered claim which may be recoverable under this chapter and under an insolvency fund or its equivalent in another state, the sole recovery: (1) with respect to a workers' compensation claim, shall be under the insolvency fund or its equivalent of the state of residence of the claimant; (2) with respect to a first-party claim of an insured for damage to or destruction of property with a permanent location, shall be under the insolvency fund or its equivalent of the state where the property is permanently situated; and (3) with respect to any other covered claim, shall be under the insolvency fund or its equivalent of the state of residence of the insured.

§ 33-36-10(a) (emphasis added).

This statute cannot apply because, as previously discussed, Federated's subrogation claim is not a "covered claim" under GIIP. Further,

13

by its plain terms, this provision is designed to prevent duplicative recoveries when more than one state's insolvent insurer scheme applies, rather than to referee the more general question of which state's statutory scheme controls in a conflict of law situation. This interpretation is buttressed by the immediately succeeding subsection of the statute, which states:

> Any recovery obtained from the pool pursuant to this chapter shall be reduced by those amounts recovered in any other state from a similar or equivalent insolvency fund in such state when the recovery was obtained by the same claimant for the same claim filed against the pool in this state.

O.C.G.A. § 33-36-10(b). If § 33-36-10(a) were truly a choice of law provision, § 33-36-10(b) would be unnecessary. Accordingly, we reject the notion that § 33-36-10(a) mandates application of FIGA.

Having thus determined that GIIP does not bar Federated's subrogation claim, we now examine whether that claim, obtained by assignment, is permitted under Georgia law. We conclude that it is. See United Budget Co. v. Ga. Insurers Insolvency Pool, 253 Ga. 435, 437, 321 S.E.2d 333, 335 (Ga. 1984) (assignee and attorney-in-fact for policyholders stood in insureds' shoes and were deemed entitled to receive unearned premiums on insolvent insurer's cancelled policies); J. Transp. Inc. v. Ga.

14

Insurers Insolvency Pool , 209 Ga. App. 748, 751, 434 S.E.2d 552, 555-556 (Ga. App. 1993) (discussing United Budget and stating "[t]hat the insured's right to recover from the insolvent insurance company was assigned to another party does not relieve the Pool from its statutory duty to pay the claim"). Hence, under Georgia law, Federated may proceed with its subrogation claim.

C. Timeliness

The foregoing analysis moots Federated's argument that Moody and MasTec waited too late to raise the FIGA defense.

## IV. CONCLUSION

We determine that the district court erred in applying Florida law, and in ruling that FIGA bars Federated's subrogation claim. Further, we conclude that Georgia law applies and that, under Georgia law, Federated may proceed with its subrogation claim. Accordingly, the summary judgment entered in Moody and MasTec's favor is reversed, and this case is remanded to the district court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**