**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS
COURT. ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.*

**November 3, 2021**

# In the Court of Appeals of Georgia

A21A0903. PALMER v. GEORGIA INSURERS INSOLVENCY POOL.

PIPKIN, Judge.

Victoria Palmer appeals the grant of summary judgment to the Georgia Insurers Insolvency Pool (the "Insolvency Pool") which relieved the Insolvency Pool of its obligation to issue payments on her pending claim for workers' compensation benefits and required Palmer to refund all amounts paid by the Insolvency Pool on that claim. Because we conclude that the State Board of Workers' Compensation has jurisdiction over the Insolvency Pool's claims at this time, we vacate the judgment of the superior court and remand this case for dismissal.

In July 2017, Palmer sustained injuries as a result of an automobile collision that occurred while she was on the job. Palmer thereafter filed a formal claim for workers' compensation benefits with the State Board of Workers' Compensation. In

November 2017, the workers' compensation insurer for Palmer's employer became insolvent,[1] and pursuant to the Georgia Insurers Insolvency Pool Act, OCGA § 33-36-1 et seq. (the "Insolvency Pool Act"), the Insolvency Pool became responsible for her claim. The Insolvency Pool has issued payments on Palmer's claim totaling $24,604.63; $21,400.04 was issued to medical providers on Palmer's behalf, and $3,204.59 was issued to Palmer for weekly indemnity disability benefits.

Palmer also submitted claims to the at-fault driver's automobile liability insurer and to her own automobile liability insurer pursuant to her policy's underinsured motorist provision. In January 2019, Palmer settled her claim with the at-fault driver's insurer for the policy limits of $25,000. In late April 2019, Palmer's insurer tendered the policy limits of $50,000 to Palmer. On May 9, 2019, Palmer's counsel informed the Insolvency Pool of the funds recovered by Palmer, and eight days later, on May 17, 2019, the Insolvency Pool filed the instant suit against Palmer in the superior court.

In its complaint, the Insolvency Pool sought a set-off of $75,000, which represented the total amount Palmer received from the at-fault driver's insurer and her

_____

[1] According to Palmer, the insolvent insurer did not issue any payments on her workers' compensation claim prior to becoming insolvent.

2

own insurer, a ruling that it is not obligated to issue any payments on Palmer's workers' compensation claim until the set-off amount is reached, and a refund from Palmer for all amounts it has paid on her workers' compensation claim.[2] The Insolvency Pool argued that OCGA §§ 33-36-14 (a) and (b), as well as this Court's recent decision in *Georgia Insurers Insolvency Pool v. Dubose*, 349 Ga. App. 238 (825 SE2d 606) (2019), authorized the requested relief. The superior court agreed and granted the Insolvency Pool's motion for summary judgment. Palmer appeals.

To resolve the issue underlying this appeal, that is, whether the superior court was authorized to grant the relief requested by the Insolvency Pool, we must consider the interplay between the Insolvency Pool Act and the Workers' Compensation Act, as well as the principles underlying these complex statutory schemes. We turn first to the Insolvency Pool Act, which governs the Insolvency Pool. OCGA § 33-36-1 et seq. Pursuant to the Insolvency Pool Act, when an insurance company is placed into liquidation, the Insolvency Pool becomes responsible for the handling and administration of the insolvent insurer's claims, and the Insolvency Pool is deemed the insurer to the extent that such claims constitute "covered claims" within the

---

[2] Despite requesting relief from its obligation to issue payments on Palmer's claim, the Insolvency Pool asserted that its payments on Palmer's claim would "be ongoing."

3

meaning of the Insolvency Pool Act. OCGA § 33-36-9. A claim under a workers' compensation insurance policy, like the claim at issue here, may fall within the meaning of a "covered claim," as defined by the Insolvency Pool Act. OCGA § 33-36-3 (4) (B) (v).

Because the Insolvency Pool is "intended to be a safety net for those whose insurers go out of business" and thus provides benefits "only when there is no other insurance available," a claimant may not necessarily "receive the exact recovery [from the Insolvency Pool] that [she] would have received from a solvent insurer." (Citation and punctuation omitted.) *Dubose*, 349 Ga. App. at 246 (1) (b). Indeed, the Insolvency Pool is authorized to bring an action to recover "[a]ny amount paid a claimant in excess of the amount authorized" by the Insolvency Pool Act, OCGA § 33-36-14 (b), and various provisions in the Insolvency Pool Act limit the Insolvency Pool's liability on covered claims.[3] The limiting provision at issue in this case is frequently referred to as the set-off provision:

---

[3] See, e.g., OCGA §§ 33-36-3 (4) (A) - (N) (defining "covered claim" and excluding certain types of claims from that definition); OCGA § 33-36-10 (b) (preventing duplicative recoveries when more than one state's insolvent insurer scheme applies); OCGA § 33-36-14 (d) (1) (authorizing the Insolvency Pool to recover all amounts paid by the Insolvency Pool on behalf of any person whose net worth exceeded $25 million before the date on which the person's insurer became insolvent).

[A]ny person having a claim against a policy or an insured under a policy issued by an insolvent insurer, which claim is a covered claim and is also a claim within the coverage of any policy issued by a solvent insurer, shall be required to exhaust first his or her rights under such policy issued by the solvent insurer. The policy of the solvent insurer shall be treated as primary coverage and the policy of the insolvent insurer shall be treated as secondary coverage and his or her rights to recover such claim under this chapter shall be reduced by any amounts received from the solvent insurers.

OCGA § 33-36-14 (a).

We recently considered the set-off provision in *Dubose*, but our holding in that case was limited to establishing what amounts received by a claimant from a solvent insurer may be considered in ascertaining the proper set-off amount pursuant to OCGA § 33-36-14 (a). See 349 Ga. App. at 241 (1) (a), 246 (1) (b). Contrary to both the Insolvency Pool's arguments and the superior court's ruling, nothing in *Dubose* authorized the Insolvency Pool to bring a parallel action in the superior court to obtain a refund of benefits paid in connection with a pending workers' compensation claim or to alter the payment obligations imposed on the Insolvency Pool by the

Workers' Compensation Act.[4] See *Wolfe v. Bd. of Regents of Univ. System of Ga.*, 300 Ga. 223, 231 (2) (d) (794 SE2d 85) (2016) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.") (citation and punctuation omitted).

Nor do the relevant provisions of the Insolvency Pool Act support the Insolvency Pool's position. By its plain language, OCGA § 33-36-14 (a) does not create an independent cause of action allowing the Insolvency Pool to file suit in

---

[4] We note that *Dubose* is distinguishable from the present action in several important respects. In the complaint filed in this case, the Insolvency Pool indicated that the action was brought "pursuant to the Georgia Insurers Insolvency Pool Act." By contrast, *Dubose* originated as a declaratory judgment action in which the Insolvency Pool sought confirmation that OCGA § 33-36-14 (a) "required that any proceeds that Dubose received from other solvent insurance carriers . . . should reduce her claim against the [Insolvency] Pool by the full amounts received." *Dubose*, 349 Ga. App. at 238-239. Furthermore, our opinion in *Dubose* does not reflect that the Insolvency Pool sought to recover any amounts from the claimant, nor does it reflect that the Insolvency Pool sought a ruling that would alter its obligation to issue payments pursuant to the Workers' Compensation Act.

6

order to enforce the set-off provision.[5] See *Somerville v. White*, 337 Ga. App. 414, 417 (1) (787 SE2d 350) (2016) ("In the absence of . . . textual support, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.") (citation and punctuation omitted); *Best Jewelry Mfg. Co. v. Reed Elsevier Inc.*, 334 Ga. App. 826, 833 (1) (b) (780 SE2d 689) (2015) ("[T]he statutory text must expressly provide a private cause of action.") (citation and punctuation omitted). And while OCGA § 33-36-14 (b) may create such an independent cause of action, the statutory language limits the Insolvency Pool's recovery to "[a]ny amount paid a claimant *in excess* of the amount authorized" by the Insolvency Pool Act. (Emphasis supplied.) However, according to the record before us, Palmer's claim appears to be pending before the Board, and without a decision from the Board as to the amount of benefits to which

---

[5] Prior decisions of this Court have construed the set-off provision as a defense available to the Insolvency Pool that serves to limit its ultimate liability on a covered claim. See *Norman Enterprises Interior Design v. DeKalb County*, 245 Ga. App. 538, 541-542 (1) (538 SE2d 130) (2000); *Grigsby v. White*, 228 Ga. App. 682, 682 (492 SE2d 603) (1997) (Third-party tort-claimants' "compliance or non-compliance with OCGA 33-36-14 (a) will only become a relevant inquiry if and when they obtain a judgment" against the insured of the insolvent insurer.) (citation and punctuation omitted); *G & MSS Trucking v. Rich*, 224 Ga. App. 130, 132-133 (2) (479 SE2d 761) (1996) (holding that OCGA § 33-36-14 (a) requires that a *final judgment* be reduced by amounts the injured party received from solvent insurers.).

7

Palmer is entitled, the Insolvency Pool cannot yet establish that the payments it has issued in connection with Palmer's claim exceed the amount authorized by the Insolvency Pool Act.[6] In short, the Insolvency Pool does not cite, and we have not found, any authority permitting the Insolvency Pool to bring the action it did in this case, that is, a parallel action in the superior court that directly implicates a *pending* workers' compensation claim. See OCGA § 33-36-6 (e) ("The [Insolvency Pool] as a legal entity . . . shall have no cause of action against the insured of the insolvent insurer for any sums it has paid out except such causes of action as the insolvent insurer would have had if such sums had been paid by the insolvent insurer and except as otherwise provided in this chapter.").

That the Insolvency Pool's action in its present form was not authorized by law does not mean that the Insolvency Pool is without a remedy. While it is well settled that the State Board of Workers' Compensation (the "Board") "has exclusive original jurisdiction of claims under the Workers' Compensation [Act]," *Royal Indem. Co. v. Ga. Insurers Insolvency Pool*, 284 Ga. App. 787, 789 (644 SE2d 279) (2007), we have also acknowledged the Board's jurisdiction to resolve ancillary issues relating

---

[6] We note that Palmer asserted in her answer and counterclaim that she has incurred in excess of $85,000 in medical expenses alone as a result of the automobile collision.

8

to the determination of an employee's rights under the Workers' Compensation Act, even where the claim is clearly not one between an employer and an employee within the provisions of the Workers' Compensation Act.[7] See *Aetna Workers' Comp Access, LLC v. Coliseum Med. Center*, 322 Ga. App. 641, 644-645 (1) (746 SE2d 148) (2013); *Builders Ins. Group v. Ker-Wil Enterprises*, 274 Ga. App. 522 (2) (618 SE2d 160) (2005). Indeed, the Workers' Compensation Act "is intended to provide a *complete* and *exclusive* system for the resolution of disputes between employers and employees who are subject to this chapter." (Emphasis supplied.) OCGA § 34-9-23. As we have previously explained,

> [A] complete and exclusive system for the resolution of disputes between employers, their workers' compensation insurers, and their employees does, of necessity, include the power to resolve workers' compensation insurance coverage issues that bear upon the payment of benefits to an injured employee claimant. Vesting the power to resolve these ancillary coverage issues with the Board and its administrative law judges protects the interests of the insurer, the employer, and the employee and furthers the goal of providing complete relief within the workers' compensation forum.

---

[7] "On the other hand, when the rights of the employee in a pending claim are not at stake, many Boards disavow jurisdiction and send the parties to the courts for relief." (Citation and punctuation omitted.) *Aetna Workers' Comp Access, LLC v. Coliseum Med. Center*, 322 Ga. App. 641, 645 (1) (746 SE2d 148) (2013).

9

(Punctuation omitted.) *Builders Ins. Group*, 274 Ga. App. at 525. And pursuant to the Insolvency Pool Act, the Workers' Compensation Act is applicable to the Insolvency Pool. See OCGA § 33-36-9 (Where the Insolvency Pool is deemed the insurer on a covered claim, it has "all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent[.].")). See also *Norman Enterprises Interior Design v. DeKalb County*, 245 Ga. App. 538, 541 (1) (538 SE2d 130) (2000) ("[I]t is reasonable to presume that [the Insolvency Pool's] relationship to its insured and other claimants is similar (although perhaps not identical) to that of regular insurance companies.") (citations and punctuation omitted); *Builders Ins. Group*, 274 Ga. App. at 524 (2) ("[I]nsurers are not strangers to workers' compensation proceedings. Further, every policy insuring the payment of compensation provided for in the [Workers' Compensation] Act is deemed to be subject to the Act.").

As previously discussed, the Insolvency Pool sought a ruling relieving it of its obligation to issue payments on Palmer's workers' compensation claim, as well as a refund of the amounts paid to Palmer in connection with her claim. These claims clearly relate to Palmer's rights under the Workers' Compensation Act. Because resolution of the Insolvency Pool's claims at issue here is at least ancillary – if not directly related – to the resolution of Palmer's pending claim for workers'

10

compensation benefits and because Palmer's claim will in fact be affected by the resolution of the Insolvency Pool's claims here, the Board has subject matter jurisdiction to resolve the Insolvency Pool's claims at this time.[8] See *Royal Indem. Co.*, 284 Ga. App. at 790 ("[T]he [superior] court did not have subject matter jurisdiction to order the payment of workers' compensation benefits."); *Builders Ins. Group*, 274 Ga. App. at 525. Cf. *Aetna*, 322 Ga. App. at 645 (1) (breach of contract claim did not fall within the Board's exclusive jurisdiction because "[n]o specific employee claimant or claim is referenced, and neither [party] point[ed] to any employee whose claim of benefits would be affected by resolution" of the breach of contract claim). See also *TIG Specialty Ins. Co. v. Brown*, 283 Ga. App. 445, 446-447 (641 SE2d 684) (2007) (addressing right of insurance carriers to dispute coverage after expiration of 60-day statute of limitation for contravention of a claimant's right to compensation contained in OCGA § 34-9-221 (h)). Thus, to the extent that the

---

[8] The Insolvency Pool argues that any question of subject matter jurisdiction has been waived in this case because Palmer did not raise the issue on appeal. However, "[p]arties may not give jurisdiction to a court by consent, express or implied, as to the person or subject matter of an action. . . . [S]ubject matter jurisdiction has a unique attribute. It can *never* be waived." (Emphasis in original; citations and punctuation omitted.) *Cowart v. Ga. Power Co.*, 354 Ga. App. 748, 752 (841 SE2d 426) (2020).

Insolvency Pool wishes to litigate the issues raised in this case at this time, it must do so before the Board.[9]

For these reasons, we vacate the superior court's grant of summary judgment to the Insolvency Pool and remand this case to the superior court with direction to dismiss the Insolvency Pool's complaint.

*Judgment vacated and case remanded with direction. Miller, P. J., and Hodges, J., concur.*

---

[9] Of course, "[a]fter a workers' compensation decision becomes final at the administrative level, the parties have a right of direct appeal to the superior court, pursuant to OCGA § 34-9-105 (b)." (Citation and punctuation omitted.) *McKenney's, Inc. v. Sinyard*, 350 Ga. App. 260, 260 (828 SE2d 639) (2019). Critically, the superior court's jurisdiction to consider appeals in workers' compensation cases is limited to cases where the Board's ruling constitutes a "final order or judgment" as contemplated by OCGA § 34-9-105 (b). See *Premier Elevator Co./SOI v. Edwards*, 341 Ga. App. 235, 236 (799 SE2d 588) (2017). See also *Holder v. City of Atlanta*, 294 Ga. App. 568, 570 (669 SE2d 504) (2008) ("The right to judicial review is restricted to the method prescribed by the Workers' Compensation Act, and the legislature conferred a limited jurisdiction on the superior courts to review the decisions of the Board.") (citations and punctuation omitted).