[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 27, 2008
THOMAS K. KAHN
CLERK

No. 07-13345

_____

D. C. Docket No. 03-00247-CV-WDO-5

FEDERATED RURAL ELECTRIC INSURANCE EXCHANGE,

Plaintiff-Appellant,

versus

R.D. MOODY & ASSOCIATES, INC.,
MASTEC NORTH AMERICA, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(June 27, 2008)**

Before EDMONDSON, BLACK and FARRIS,[*] Circuit Judges.

PER CURIAM:

---

[*] The Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit Court of Appeals, sitting by designation.

Thomas Stanley Smith was fatally injured by a power line owned by Washington Electric Membership Corporation and constructed in 1997 by R.D. Moody & Associates, Inc. Washington EMC's insurer, Federated Rural Electric Insurance Exchange, settled with Smith's estate and brought this action seeking contribution from Moody. The district court granted summary judgment for Moody, holding that, under the terms of the parties' 1994 construction contract, Moody's liability terminated when possession and control of the line were turned over to Washington EMC. On appeal, Federated argues that (1) the construction of the power line was not governed by the 1994 contract but, instead, a 1995 "Cost-Plus Proposal" and (2) even if the 1994 contract governs, Moody is liable under an unsigned indemnity agreement that was appended to the contract. We affirm.

## I

On December 16, 1993, Moody and Washington EMC entered into a Distribution Line Extension Construction Contract, whereby Moody agreed to construct power lines for Washington EMC. The parties call this the 1994 contract. The 1994 contract contained a provision, Article I, Section 2, titled "Additional Projects," that read:

> From time to time the Owner and the Contractor may enter into negotiations for the performance of work at labor prices which may differ from those in the Proposal (such work being hereinafter called "Additional Projects"). Except as may otherwise be agreed upon in

2

writing by the Owner and the Contractor at the time the supplemental contract for the Additional Project is negotiated, the provisions of the Contract for the Project shall apply.

Approximately nine months into the 1994 contract, Washington EMC solicited bids for a new contract to complete the balance of work remaining on its "1993-1995 Work Plan." Washington EMC executed a contract with Floyd S. Pike Electrical Contractor, Inc., the low bidder.

On September 26, 1995, Washington EMC contacted Moody to construct additional power lines pursuant to a Cost-Plus Proposal. The proposal consisted of a single page listing labor and equipment rates. Moody constructed the power line that fatally injured Mr. Smith in January 1997.

After Mr. Smith's death, his surviving spouse brought a personal injury and wrongful death suit against Washington EMC and its consulting engineer. Pursuant to a settlement agreement, Mrs. Smith received $6,500,000 from Washington EMC's insurer, Federated, and $500,000 from the engineer.

Washington EMC brought suit in federal court seeking indemnity or contribution from Moody, asserting that Moody was negligent in constructing the power line that injured Mr. Smith. Federated was later substituted as the party plaintiff. The district court initially granted summary judgment to Moody on the ground that the action was barred by the Florida Insurance Guaranty Act.

3

*Federated Rural Elec. Ins. Exch. v. R.D. Moody & Associates, Inc.*, 468 F.3d 1322, 1323 (11th Cir. 2006). We reversed, finding that Georgia law controlled the dispute. *Id.*

On remand, the district court granted summary judgment in favor of Moody, finding that under Article IV, Section 4 of the 1994 contract, Moody's liability terminated when possession and control of the line were turned over to Washington EMC. This appeal followed.

## II

We review de novo a district court's order granting summary judgment. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). We view the evidence in the light most favorable to the non-moving party. *See Damon*, 196 F.3d at 1358.

## III

Federated argues that liability is governed by the Cost-Plus Proposal rather than the 1994 contract. It argues that the 1994 contract was terminated when Moody entered into the construction contract with Pike. Thus, the only contract in

4

effect at the time of the 1997 construction was the Cost-Plus Proposal. To support this argument, Federated points to declarations from Robert S. Moore and Thomas E. Glover stating that Washington EMC's policy was to have only one power line contractor under contract at any time.

Under Georgia law,

> there are three steps in the process of contract construction. The trial court must first decide whether the contract language is ambiguous; if it is ambiguous, the trial court must then apply the applicable rules of construction (O.C.G.A. § 13-2-2); if after doing so the trial court determines that an ambiguity still remains, the jury must then resolve the ambiguity.

*Georgia-Pacific Corp. v. Lieberam*, 959 F.2d 901, 904 (11th Cir. 1992) (quoting *Copy Sys. of Savannah, Inc. v. Page*, 398 S.E.2d 784, 785 (Ga. Ct. App. 1990)). "A contract term is ambiguous if it is reasonably susceptible of more than one interpretation." *Int'l Bhd. of Boilermakers v. Local Lodge D111*, 858 F.2d 1559, 1561 (11th Cir. 1988).

The 1994 contract unambiguously governs the 1997 construction. Article I, Section 2 of the contract states that, in the absence of an agreement to the contrary, the provisions of the 1994 contract will apply to future construction projects. The Cost-Plus Proposal signed by the parties consisted only of Moody's labor and equipment rates and its billing procedure. Because the Cost-Plus Proposal contained no statement that indicated otherwise, the terms of the 1994 contract

5

control the construction.

Federated argues that Article I, Section 2 is ambiguous because it is susceptible to another interpretation: it applies to supplemental negotiations during the one-year duration of the contract. This reading is not supported by the plain language of the contract. The contract contains no terms indicating that it would expire after one year or when Washington EMC entered into another contract with a competitor. Federated's interpretation would require the contract to be read in conjunction with the Glover and Moore declarations. We may not, however, look outside the plain language of the contract to create ambiguity. *See Georgia-Pacific Corp.* 959 F.2d at 904.

## IV

Federated argues that the district court erred in finding that Moody was not liable under the 1994 contract. We reject the argument. Under Article IV, Section 1(f) of the 1994 contract, Moody was liable for damage to persons or property "from the commencement of work to completion" or until Washington EMC took possession and control of the power line. However, pursuant to Article IV, Section 4, "[u]pon . . . delivery of possession and control to the Owner," these risks were "terminated." Under the terms of the contract, Moody's liability for personal injuries arising from negligent construction ended when Washington EMC took

6

control of the line in 1997, three years prior to Mr. Smith's accident.

Federated argues that the liability provisions of the contract are ambiguous. It points to Article III, Section 2 of the contract, which provides that "[u]pon the Completion of Construction of any Section of the Project . . . the Contractor shall deliver to the Owner in the form attached hereto, . . . (2) an agreement to hold the Owner harmless against any liens arising out of the Contractor's performance . . . ." Federated argues that this provision incorporates into the contract an unsigned form that was attached to the contract stating that "the Contractor will . . . agree to indemnify and hold harmless the Owner from any *claim* or lien arising out of . . . the performance of the contract." (emphasis added).

This argument also fails. Moody did not "specifically assent" to be bound by all the terms of the attached form. *Hembree v. Johnson*, 482 S.E.2d 407, 408 (Ga. Ct. App. 1997). Instead, it merely agreed to provide to Washington EMC an agreement that it would be liable for all liens arising from its performance of the contract. If the parties intended for Moody to be liable for all *claims* arising from its performance, they would have added this language to the body of the contract.

Federated's reading of the contract would also contravene the rule that "a court should, if possible, construe a contract so as not to render any of its provisions meaningless." *White v. Kaminsky*, 610 S.E.2d 542, 545 (Ga. Ct. App.

7

2004) (citation omitted); *see also* O.C.G.A. § 13-2-2(4). To construe the 1994 contract to require Moody to indemnify Washington EMC against all claims would render meaningless the provision in Article IV terminating Moody's liability.

**AFFIRMED.**