**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 20, 2015**

# In the Court of Appeals of Georgia

A15A0895. KINGDOM RETAIL GROUP, LLP v. PANDORA
 FRANCHISING, LLC.

BRANCH, Judge.

We granted Kingdom Retail Group's application for interlocutory appeal to review the trial court's order transferring this case from the Superior Court of Thomas County to the Superior Court of Gwinnett County. For the reasons given below, we reverse and remand with direction.

The record shows that Pandora Franchising, LLC, is a limited liability company with its principal place of business in Columbia, Maryland. Pandora is in the business of franchising independent jewelry stores nationwide. Kingdom, based in Thomasville, Thomas County, was formed for the purpose of purchasing 28 Pandora franchises from a series of entities owned by a certain family; the record does not

reveal where the family or its entities are located. When Kingdom's attempt to purchase these franchises failed, Kingdom filed an action in tort against Pandora in the Superior Court of Thomas County, alleging that Pandora improperly interfered with Kingdom's attempted acquisition and asserting claims of tortious interference, fraud, negligent misrepresentation, defamation, and promissory and equitable estoppel. Kingdom alleged that the "wrongful acts perpetrated by Defendant which form the basis for this Complaint occurred in Thomasville, Thomas County, Georgia."

Pandora answered and filed a "Notice of Removal of Venue" in which it declared that under the corporate venue statute, it was entitled to remove the action to the Superior Court of Gwinnett County where it "maintains its registered office as its principal place of business in the State of Georgia." Pandora attached to the notice a sworn declaration of the vice president of sales of Pandora's parent corporation, in which she averred that Pandora was registered and authorized to do business in Georgia; that it was in good standing with the Secretary of State; that its registered agent was located in Gwinnett County; that it "transacts business in Gwinnett County, Georgia[,] with and through an authorized franchisee located in that County"; and

that it "does not have any other principal office or principal place of business in the State of Georgia."

The court conducted a hearing on the matter and eventually entered an order in which it held that

> this Court having reviewed and determined [that] the Notice [of Removal of Venue] and the facts contained therein are in compliance with [OCGA § 14-2-510 (b) (4)] for removal of venue, this Court hereby orders and directs that venue of this action be and is hereby removed and transferred to the Superior Court of Gwinnett County, Georgia.

Kingdom then sought and obtained from the Thomas County court a certificate of immediate review and timely filed its application for interlocutory review with this Court. This Court granted the application on November 6, 2014, and Kingdom timely filed a notice of appeal thereafter. [1]

"[W]hen the trial judge conducts a hearing on a motion to dismiss or transfer for improper venue, his findings, as a trier of fact, are tested by the any evidence rule." *McLendon v. Albany Warehouse Co.*, 203 Ga. App. 865, 866 (1) (418 SE2d

---

[1] On October 14, 2014, after the Thomas County court granted the certificate of immediate review and one day before Kingdom applied for interlocutory review with this Court, the case was transferred to the Superior Court of Gwinnett County where Kingdom timely filed its notice of appeal.

3

130) (1992) (citation omitted). We review the trial court's application of the law de novo. *Ross v. Waters*, 332 Ga. App. 623, 624 (1) (774 SE2d 195) (2015); *HD Supply v. Garger*, 299 Ga. App. 751 (683 SE2d 671) (2009).

1. This case first calls on us to construe the terms of the applicable statute. "In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1. Nevertheless, when construing a statute, "we must presume that the General Assembly meant what it said and said what it meant." *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation and punctuation omitted). Thus if the language of the statute "is plain and unambiguous, judicial construction is not only unnecessary but forbidden." *Six Flags Over Ga. v. Kull*, 276 Ga. 210, 211 (576 SE2d 880) (2003) (citation omitted); *CPF Investments v. Fulton County Bd. of Assessors*, 330 Ga. App. 744, 746 (769 SE2d 159) (2015); *Opensided MRI of Atlanta v. Chandler*, 287 Ga. 406, 407 (696 SE2d 640) (2010). Where terms of art are not involved, we look to the common and customary usages of the words and their context. *Zaldivar v. Prickett*, 297 Ga. 589, 591 (1) (774 SE2d 688) (2015). "For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law

4

alike — that forms the legal background of the statutory provision in question." Id. (citation and punctuation omitted).

The Constitution of the State of Georgia provides that in all civil cases not otherwise specifically provided for, venue lies "in the county where the defendant resides; venue as to corporations, foreign and domestic, shall be as provided by law." Ga. Const. of 1983, Art. VI, Sec. II, Par VI. Pandora is a foreign limited liability company, and Georgia law provides that "[f]or purposes of determining venue, the residence of a limited liability company or foreign limited liability company shall be determined in accordance with Code Section 14-2-510 as though such limited liability company or foreign limited liability company were a corporation." OCGA § 14-11-1108 (b).

Subsection (b) of OCGA § 14-2-510[2] determines where domestic and foreign corporations are "deemed to reside and to be subject to venue" in this state:

> (b) Each domestic corporation and each foreign corporation authorized to transact business in this state shall be deemed to reside and to be subject to venue as follows:

---

[2] Subsection (a) provides as follows: "Venue in proceedings against a corporation shall be determined in accordance with the pertinent constitutional and statutory provisions of this state in effect as of July 1, 1989, or thereafter."

(1) In civil proceedings generally, in the county of this state where the corporation maintains its registered office;

(2) In actions based on contracts, in that county in this state where the contract to be enforced was made or is to be performed, if the corporation has an office and transacts business in that county;

(3) In actions for damages because of torts, wrong, or injury done, in the county where the cause of action originated, if the corporation has an office and transacts business in that county;

(4) In actions for damages because of torts, wrong, or injury done, in the county where the cause of action originated. If venue is based solely on this paragraph, the defendant shall have the right to remove the action to the county in Georgia where the defendant maintains its principal place of business.

The plain meaning of subsection (b) shows that it applies to domestic and foreign corporations alike. Thus, it applies to determining venue for an action against Pandora, a foreign LLC. The first four subsections show that Kingdom had an option of where to file suit. See *WBC Holdings v. Thornton*, 213 Ga. App. 48, 49 (443 SE2d 686) (1994) (the venue provisions of the statute are cumulative) (citation omitted). Under subsection (b)(1), Kingdom could have filed suit in Gwinnett County because

6

that is where Pandora's registered office[3] is located. Subsection (b) (2) is inapplicable because it applies to claims "based on contracts," and Kingdom filed suit in tort. Subsection (b) (3) would allow Kingdom to file suit in Thomas County if Pandora had an office and transacted business in that county, but there is no evidence in the record to that effect. Subsection (b) (4), however, allows Kingdom to file suit in Thomas County because Kingdom alleged that Pandora's torts occurred in that county and Pandora has not challenged that assertion. In fact, the parties agree that Kingdom filed suit in Thomas County under subsection (b) (4). In other words, Kingdom filed suit in tort but did not allege that Pandora has an office or transacts business in that county such that subsection (b) (3) would apply. Subsection (b) (4) also provides, however, that

> If venue is based solely on this [subsection], the defendant shall have the right to remove the action to the county in Georgia where the defendant maintains its principal place of business.

OCGA § 14-2-510 (b) (4). The term "principal place of business" is not defined in the statute, which leads to the dispute in this case.

---

[3] For a foreign limited liability company, "[t]he address of the business office of the registered agent shall be the same as the address of the registered office." OCGA § 14-11-703 (a) (2).

7

Pandora contends that subsection (b) (4) refers to the defendant's principal place of business *in Georgia* even if its national principal place of business is in Maryland; it further contends that it submitted factual support for the trial court's conclusion that Pandora's principal place of business in Georgia was in Gwinnett, namely that its registered agent was located in Gwinnett County, that Pandora transacted business there, and that Pandora "does not have any other principal office or principal place of business in the State of Georgia." Kingdom argues that subsection (b) (4) refers to the defendant's national principal place of business, which for Pandora, is located in Maryland. Kingdom therefore concludes that Pandora has no right under subsection (b) (4) to transfer venue to a Gwinnett County court.

Our review of Georgia case law shows that in determining questions of residency and jurisdiction, the term "principal place of business" is used almost exclusively to refer to a single place in the world meeting a certain standard, not to a place within a state meeting that standard. See, e.g., *Lima Delta Co. v. Global Aerospace*, 325 Ga. App. 76-77 (752 SE2d 135) (2013) ("Global has its principal place of business in Parsippany, New Jersey[,] and has a regional office in Atlanta. Lima Delta is a Delaware corporation whose principal place of business is Wilmington, Delaware. . . . Societe Commerciale et Industriale Katangaise, [is] a

8

mining company based in the Democratic Republic of Congo [ ] whose principal place of business is in that country."); *Hyperdynamics Corp. v. Southridge Capital Mgmt.*, 305 Ga. App. 283, 285, II (B) (699 SE2d 456) (2010) ("Southridge Capital Management LLC [is] a Delaware limited liability company with its principal place of business in Ridgefield, Connecticut"); *Lapolla Indus., Inc. v. Hess*, 325 Ga. App. 256, 265 (3) (750 SE2d 467) (2013) ("Premium is a Georgia corporation with its principal place of business in Georgia"; "Lapolla is a Delaware corporation with its principal place of business in Texas"); *Pratt & Whitney Canada, Inc. v. Sanders*, 218 Ga. App. 1, 2 (460 SE2d 94) (1995) ("PWC is a Canadian corporation with its principal place of business in Longueuil, Quebec"). One case specifically states that a company does not have its principal place of business in Georgia. *Conex Freight System v. Ga. Ins. Insolvency Pool*, 254 Ga. App. 92, 95 (1) (a) (561 SE2d 221) (2002) ("Conex is not a Georgia corporation and does not have its principal place of business in this state."). Another refers to a company moving its principal place of business from Ohio to Georgia. *Yukon Partners, Inc. v. Lodge Keeper Group*, 258 Ga. App. 1, 3, n. 2 (572 SE2d 647) (2002). We also note that a foreign limited liability company, such as Pandora, transacting business in Georgia must procure a certificate of authority to do so, and that the application requires the foreign company to set

9

forth "[t]he address of its principal place of business." OCGA § 14-11-702 (a) (6). And Pandora's application lists Columbia, Maryland as its principal place of business.[4] Finally, Black's defines "principal place of business" as "[t]he place of a corporation's chief executive offices, which is typically viewed as the 'nerve center.'" Black's Law Dictionary (9th ed. 2009).

Thus, without considering OCGA § 14-2-510 as a whole or the context of the use of the term "principal place of business" as used therein, it is clear that under the commonly accepted definition of the term, Pandora's principal place of business is Maryland as Pandora admitted in a sworn affidavit: "Pandora Franchising is a limited liability company formed under the law of Maryland with its principal place of business in Columbia, Maryland."

The language of the OCGA § 14-2-510 (b) and its context does not dissuade us from this conclusion. As shown above, subsection (b) applies to both domestic and foreign corporations, which necessarily includes corporations whose principal place of business is not in Georgia, and it determines where those corporations are "deemed to reside and to be subject to venue" in this state. Subsection (b) (1) provides that one

---

[4] This Court has previously taken judicial notice of the records required by law to be kept in the office of the Secretary of State of Georgia. *Orkin Exterminating Co. v. Gilland*, 130 Ga. App. 788, 789 (204 SE2d 469) (1974).

"deemed residence" of a corporation in civil cases generally is the county where the corporation maintains its registered office. Subsection (b) (3) provides another deemed residence to be the situs of the tort but only if the corporation has an office and transacts business in that county. And subsection (b) (4) provides yet another deemed residence in the county where the cause of action in tort arose. But the same subsection gives a defendant in such a case a right to remove the action "to the county in Georgia where the defendant maintains its principal place of business."

Subsection (b) (4) easily could have been written to provide that a defendant could remove the case to another deemed residence as provided in the statute, most obviously, to the county where the company maintains its registered office, as provided in subsection (b) (1), or to a county where the corporation "has an office and transacts business," as stated in subsection (b) (3). But the legislature did not do so. It used the term "principal place of business." And we must presume that the legislature did so knowing the commonly understood meaning of the term. See *Hughes v. Ga. Dept. of Corrections*, 267 Ga. App. 440, 442 (1) (600 SE2d 383) (2004) (courts presume "that the legislature knows and enacts statutes with reference to the existing law") (citation and punctuation omitted); *Fair v. State*, 288 Ga. 244, 256 (2) (A) (3) (702 SE2d 420) (2010). It is true that subsection (b) (4) allows a

11

transfer to the "county in Georgia" where the defendant has its principal place of business. But read together with the remainder of the statute, we cannot conclude that the legislature meant that to mean "principal place of business in Georgia." Rather, the plain meaning of subsection (b) (4) allows a transfer only if a defendant's principal place of business, as defined above, is located in Georgia.

We therefore conclude as a matter of law that OCGA § 14-2-510 (b) (4) does not allow Pandora to transfer this case to Gwinnett County. The trial court therefore erred by transferring the case to Gwinnett County. The case is hereby remanded to the Superior Court of Gwinnett County with instruction to remand the case to the Superior Court of Thomas County for further proceedings.

*Judgment reversed and case remanded with direction. Andrews, P. J., concurs. Miller, J., concurs in judgment only*.