S16G0490. PANDORA FRANCHISING, LLC v. KINGDOM RETAIL GROUP, LLLP.
(791 SE2d 786)

BENHAM, Justice.

Appellant Pandora Franchising, LLC ("Pandora") is a foreign limited liability company. In its application for certificate of authority to transact business in Georgia, Pandora identifies its principal place

of business as being located in Maryland.[1] Appellee Kingdom Retail Group, LLLP ("Kingdom") filed suit against Pandora in Thomas County Superior Court, alleging Pandora wrongfully withheld its consent to Kingdom's bid to acquire a number of Pandora franchises. Kingdom alleged venue is proper in Thomas County pursuant to OCGA § 14-2-510 (b) (4) because this is the county where the cause of action originated.[2] While subsection (b) (4) of the statute establishes venue for tort actions against corporations "in the county where the cause of action originated[,]" it also establishes a procedure for removal from that county: "If venue is based solely on this paragraph, the defendant shall have the right to remove the action to the county in Georgia where the defendant maintains its principal place of business." Over Kingdom's objection, the trial court granted Pandora's request to remove the complaint to Gwinnett County where, Pandora claimed in its notice of removal, "it maintains its registered office as its principal place of business in Georgia."

The Court of Appeals granted Kingdom's application for interlocutory review and reversed the grant of removal. *Kingdom Retail Group v. Pandora Franchising*, 334 Ga. App. 812 (780 SE2d 459) (2015). This Court granted certiorari to determine whether the Court of Appeals correctly construed OCGA § 14-2-510 (b) (4) to mean that, in a claim in which the basis for venue is the allegation that the cause of action originated in the county where the claim was filed, only a corporation with its worldwide principal place of business, or "nerve center" in Georgia has the right to remove the claim to the county in Georgia where that principal place of business is located. Pandora asserts the legislature meant to permit a company such as itself, which maintains its worldwide principal place of business in a place other than Georgia, to remove such a claim to the county in which it maintains its Georgia principal place of business. The Court of Appeals, according to Pandora, improperly rewrote subsection (b) (4) of the corporate venue statute, and eliminated the constitutionally protected removal right for companies headquartered outside Georgia, contrary to the statute's plain meaning and purpose. We affirm the Court of Appeals' decision and adopt the reasoning set forth in that court's opinion. Pandora challenges that reasoning on three basic grounds.

---

[1] See *Kingdom Retail Group v. Pandora Franchising*, 334 Ga. App. 812, 817 n. 4 (780 SE2d 459) (2015) (taking judicial notice of the application filed with the Secretary of State of Georgia).

[2] Although Pandora is a limited liability company, the venue provisions of OCGA § 14-2-510 for corporations apply to such entities. OCGA § 14-11-1108 (b).

1. (a) Citing *Fed. Deposit Ins. Corp. v. Loudermilk*,[3] Pandora argues that, naturally read, subsection (b) (4) of the venue statute does not eliminate removal rights for companies like itself that are headquartered outside Georgia. Pandora asserts the Court of Appeals disregarded the plain language of this subsection by interpreting "principal place of business" to mean a company's single headquarters in the world. But we find instructive the analysis applied by federal courts when determining the state where a corporation has its "principal place of business" for purposes of diversity of jurisdiction. As the United States Supreme Court stated in *Hertz Corp. v. Friend*:[4]

> [W]e conclude that the phrase "principal place of business" refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities. Lower federal courts have often metaphorically called that place the corporation's "nerve center."

A corporation's "nerve center" is typically one single place, and we conclude that for purposes of determining the right to remove to another county pursuant to subsection (b) (4) of the corporate venue statute, "principal place of business" refers to only one single place. If that place is in a county in Georgia, a corporate defendant sued for tort in a complaint asserting jurisdiction under subsection (b) (4) has a right to remove to a court in that county; if that place is not in Georgia, the right to remove is not applicable.

The term "principal place of business" is not, and was not at the time subsection (b) (4) was enacted in 2000,[5] defined in the Georgia Business Corporation Code, OCGA § 14-2-101 et seq. The term "principal office" is, however, defined as "the office in or out of this state so designated in the annual registration where the principal executive offices of a domestic or foreign corporation are located." OCGA § 14-2-140 (22). Pandora asserts that the Court of Appeals effectively gives that same meaning to the term "principal place of business," and had the legislature intended to limit removal to the place in Georgia, if any, where a company maintains its principal office it would have used that defined term.

The issue in this case, however, is not so much the meaning of "principal place of business," but the significance of the placement of

---

[3] 295 Ga. 579, 588 (2) (761 SE2d 332) (2014) (holding courts " 'must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.' [Cit.]").

[4] 559 U. S. 77, 80-81 (130 SCt 1181, 175 LE2d 1029) (2010).

[5] Civil Litigation Improvement Act of 2000, Ga. L. 2000, p. 228, § 4.

the phrase "in Georgia" within the sentence granting the right of removal. Pandora asserts the statute's language — "the county *in Georgia* where the defendant maintains its principal place of business" — should be interpreted as "the county where the defendant maintains its principal place of business *in Georgia*." This argument ignores the fact that the term "principal place of business" has also been employed by the legislature in a number of other statutes defining venue for various purposes, but in each of these other venue statutes the operable phrase is "principal place of business *in this state*."[6] The statute at issue in this case, which defines venue for civil actions against corporations, appears to be the only venue statute in which the legislature employed the language "principal place of business" without the added phrase "in this state." Most of the venue statutes cited herein that confer venue for a legal action to the county in which a business entity maintains its principal place of business *in this state* were enacted prior to the date the legislature amended OCGA § 14-2-510 in 2000 to add the removal provision contained in subsection (b) (4). Consequently, at the time subsection (b) (4) was enacted, the legislature knew how to make clear its intent to confer venue at the place where a business entity maintained its principal place of business in this state, whether or not it was its worldwide principal place of business. We must presume the legislature's failure to do so in this venue statute was a matter of considered choice. See, e.g., *Citibank (South Dakota), N.A. v. Graham*, 315 Ga. App. 120, 122 (1) (726 SE2d 617) (2012) (comparing statute addressing tax implications for a credit card company's bad debt and statute addressing tax implications for property returned to the merchant after purchase, it was obvious the legislature's failure to provide a refund for bad debts was a considered choice). "When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant." (Citation and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013).

---

[6] See, e.g., OCGA § 10-5A-23 (establishing venue for actions to enforce laws governing commodity contracts and options in the county of the violator's "principal place of business in this state"); OCGA § 10-14-13 (establishing venue for actions to enforce laws governing cemetery and funeral services to the county of the violator's "principal place of business in this state"); OCGA § 16-9-94 (1) (establishing venue for enforcement of laws governing computer related crimes in the county of the violator's "principal place of business in this state"); OCGA § 16-9-103 (1) (establishing venue for enforcement of laws involving spam e-mails in the county of the victim's "principal place of business in this state"); OCGA § 43-17-15 (establishing venue for enforcement of the Georgia Charitable Solicitations Act of 1988 in the county of the violator's "principal place of business in this state"); OCGA § 50-13-19 (b) (establishing venue for a corporation for judicial review of a final decision under the Administrative Procedure Act in the superior court of the county "where the petitioner maintains its principal place of doing business in this state").

Further, this Court determines the meaning and effect of a statute "with reference to [and consideration of] other statutes and decisions of the courts." (Citation and punctuation omitted.) *Summerlin v. Ga. Pines Community Svc. Bd.*, 286 Ga. 593, 594 (2) (690 SE2d 401) (2010).

Applying the rules of statutory construction, we conclude the language of subsection (b) (4) confers the right of a company to remove an action in which venue is based upon this subsection only to the county in Georgia where the defendant maintains its worldwide principal place of business. If that place is not located in a Georgia county, then no right to remove is granted. We reject Pandora's argument that such a reading renders the phrase "in Georgia" meaningless. That phrase is in no way rendered meaningless by the fact that it appears before, rather than after, "principal place of business." In our opinion, the most reasonable way of reading subsection (b) (4) is that it authorizes removal to the county in Georgia, if any, where the company maintains its single principal place of business. If the legislature had meant to authorize removal to a company's Georgia principal place of business as opposed to its single principal place of business, if that place is in a county in Georgia, it would have placed the phrase "in Georgia" or "in this state" after the term "principal place of business," as it did in the other cited venue statutes.[7]

(b) In its notice of removal filed in the trial court, Pandora asserted its principal place of business is Gwinnett County because that is the place where it maintains its registered office and registered agent. In support of that position it relied, in part, upon OCGA § 14-2-510 (b) (1), which establishes that venue for both foreign and domestic corporations "[i]n civil proceedings generally [is] in the county in this state where the corporation maintains its registered office . . . ." But that is not the venue provision on which Kingdom's complaint rests. When a plaintiff bases its claim of jurisdiction on OCGA § 14-2-510 (b) (4), it is required to establish only that it has filed the action in the county where the cause of action originated whether or not the defendant has an office and transacts business in that county. The requirement to establish that the defendant has an office and transacts business in the county where the action is filed applies to subsection (b) (3), but not (b) (4).

---

[7] In any event, Kingdom asserts that Pandora failed to demonstrate its "Georgia principal place of business," if such a place exists, is in Gwinnett County, but since we decide this case upon the holding that OCGA § 14-2-510 (b) (4) authorizes removal only to a county in Georgia where the defendant business entity has its single principal place of business, we need not address these arguments.

Similarly, the county where a defendant maintains its registered office is irrelevant to the issue of removal pursuant to subsection (b) (4); "the county in Georgia where the defendant maintains its principal place of business" is the place to which a defendant has the right to remove a tort action in which venue is premised upon subsection (b) (4).

The term "registered office" was used in subsection (b) (1) to establish venue in civil actions against corporations generally, but was not used in subsection (b) (4) to establish the county to which a corporation in a tort action filed in reliance upon that venue provision could remove the action. Subsection (b) of OCGA § 14-2-510 establishes the various places where either a domestic or foreign corporation "shall be deemed to reside and to be subject to venue" in this state. As the Court of Appeals noted:

> Subsection (b) (4) easily could have been written to provide that a defendant could remove the case to another deemed residence as provided in the statute, most obviously, to the county where the company maintains its registered office, as provided in subsection (b) (1), or to a county where the corporation "has an office and transacts business," as stated in subsection (b) (3). But the legislature did not do so.

*Kingdom*, supra, 334 Ga. App. at 818. "[W]here the legislature uses certain language in one part of the statute and different language in another, the Court assumes different meanings were intended." (Citation and punctuation omitted.) *Robinson v. State*, 312 Ga. App. 736, 750 (4) (d) (719 SE2d 601) (2011). When interpreting a statute, a presumption exists "that the legislature did not intend to enact meaningless language." (Citation and punctuation omitted.) *State of Ga. v. Free At Last Bail Bonds*, 285 Ga. App. 734, 737 (647 SE2d 402) (2007). See also *In the Interest of L. J.*, 279 Ga. App. 237, 239 (630 SE2d 771) (2006) (where the legislature uses two different words in the same statutory subsection it does not use the words interchangeably).

On appeal, Pandora also asserts that, since "principal place of business" is given no statutory definition, where that place exists for purposes of removal under subsection (b) (4) is subject to a factual determination to be made in each case. According to Pandora, it is the place where a foreign company lawfully doing business in this State maintains its "most important place of business" or has its "most predominant business activities" in Georgia, regardless of where its global headquarters is located. But, as Kingdom points out, this approach would be subject to manipulation and forum shopping,

which appears to be contrary to the purpose for which this subsection was added. The former venue code[8] permitted a corporation to "venue shop" by choosing to register its agent (and therefore maintain its registered office, see OCGA § 14-2-1503 (a) (5)) in a county in which it had no other relationship in an attempt to obtain a more favorable jury in lawsuits filed against it. As passed, the new subsection (b) (4) expanded venue, in tort actions, to the place where the cause of action originated, whether or not the corporation maintains an office and transacts business there, but this new ground for venue was made subject to removal rights. "In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy. . . ." OCGA § 1-3-1 (a). Even assuming the removal language is capable of more than one meaning, in such a case, "we construe the statute so as to carry out the legislative intent." *Judicial Council of Ga. v. Brown & Gallo, LLC*, 288 Ga. 294, 297 (702 SE2d 894) (2010). We reject an interpretation of the removal rights established in subsection (b) (4) that would promote, rather than protect against, venue shopping by corporate defendants.

2. Pandora also faults the Court of Appeals for relying upon cases that recognize one single place as a company's principal place of business in the context of personal jurisdiction under the Long Arm Statute[9] (which cases turn, Pandora argues, on a foreign company's minimum contacts with the entire state, not its presence in a particular county) or cases construing principal place of business under the Insurers Insolvency Pool Act[10] (which cases, Pandora argues, are distinguishable because that Act allows only one residency, and thus one principal place of business, nationally). See *Kingdom*, supra, 334 Ga. App. at 816-817. Pandora argues the Court of Appeals improperly conflated the meaning of the phrase "principal place of business" as used in these other statutes with its meaning for purposes of venue. As explained in Division 1, however, other Georgia venue statutes that contain the phrase "principal place of business" expressly refer to the "principal place of business *in this state*." These other venue statutes are thereby distinguishable in that they make clear that the county in which venue lies is, in essence, the company's "Georgia principal place of business." No such qualifier is added to "principal place of business" in subsection (b) (4). We reject the argument that

---

[8] Ga. L. 1988, p. 1070, § 1 at p. 1096.
[9] OCGA § 9-10-91.
[10] OCGA § 33-36-1 et seq.

the Court of Appeals misinterpreted the meaning of "principal place of business" as it is used in subsection (b) (4).

3. Finally, Pandora points out that the venue provisions of subsection (b) of OCGA § 14-2-510 expressly apply to both domestic corporations and foreign corporations authorized to transact business in this state. According to Pandora, applying subsection (b) (4) as the Court of Appeals interpreted it will deny the right of removal to resident corporations that are headquartered outside Georgia while granting the right of removal to foreign corporations that are headquartered in Georgia, and, according to Pandora, this repudiates the legislature's intent for the venue statute to apply equally to both foreign and domestic corporations. But the statute does apply equally. Subsection (b) (4) does not grant a right to remove to either a foreign corporation or a domestic corporation that maintains its principal place of business outside Georgia. Conversely, that subsection grants a right to remove to any corporation, foreign or domestic, that maintains its principal place of business in a county in Georgia. In essence, Pandora argues that companies headquartered in other states should not be treated differently for purposes of determining venue from companies headquartered in Georgia. Pandora, however, cites no authority for the proposition that companies headquartered outside Georgia are a protected class, nor are we aware of any such authority. We note that subsection (b) (3) distinguishes between corporations that have an office in a county where the cause of action originated and those that do not, and that provision, likewise, does not unfairly discriminate on this ground.

The Georgia Constitution states generally that civil cases "shall be tried in the county where the defendant resides," and delegates to the legislature the authority to define venue as to corporations, foreign and domestic. Ga. Const. of 1983, Art. VI, Sec. II, Par. VI. Pandora cannot argue it is unfair or arbitrary for it to be subject to jurisdiction in Thomas County. Pandora, as a foreign corporation authorized to transact business in Georgia, "shall be deemed to reside and to be subject to venue . . . in the county where the cause of action originated." OCGA § 14-2-510 (b) and (b) (4). Regardless of a corporation's removal options, the constitutional rule that a defendant can only be sued where it is deemed to reside is satisfied in this case.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 3, 2016.

*Jones, Cork & Miller, Robert C. Norman, Jr., Hays B. McQueen; Faegre Baker Daniels, Heather C. Perkins, Kara Lyons, D. Lucetta Pope*, for appellant.

*Burr & Forman, Gregory F. Harley, Ashby K. Fox,* for appellee.
*Hawkins Parnell Thackston & Young, Kathryn S. Whitlock, Martin A. Levinson; Cathey & Strain, Dennis T. Cathey, David A. Sleppy,* amici curiae.

