**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS*
*COURT. ALL FILINGS MUST BE SUBMITTED WITHIN*
*THE TIMES SET BY OUR COURT RULES.*

**March 16, 2021**

# In the Court of Appeals of Georgia

A20A1818. GEORGIA GOVERNMENT TRANSPARENCY AND
    CAMPAIGN FINANCE COMMISSION v. NEW GEORGIA
    PROJECT ACTION FUND et al.

PIPKIN, Judge.

Appellant Georgia Government Transparency and Campaign Finance Commission ("the Commission") moved the Superior Court of Fulton County for an order compelling New Georgia Project Action Fund/New Georgia Project, Fair Count f/k/a/ Third Sector Development, and AFG Group, Inc. d/b/a Stacey Abrams for Governor ("Appellees") to comply with the Commission's administrative subpoenas. The superior court concluded that it lacked jurisdiction and denied the motion . This Court granted the Commission's application for discretionary appeal, and we now reverse the superior court and remand for further proceedings.

1. In August 2018, the Commission received a complaint alleging that the Stacey Abrams for Governor campaign had, without the requisite disclosures, engaged in coordination with a number of third-party nonprofit organizations that materially benefitted the campaign. The Commission initiated a preliminary investigation and issued administrative subpoenas to the Appellees to obtain "relevant communication information to determine if coordination existed between the Abrams campaign and other third-party groups[.]" According to the Commission, Appellees have only responded in part, if at all, and the Commission moved the Fulton County Superior Court to compel Appellees to produce the records and communications. In a one-paragraph order, citing to *Oxendine v. Govt. Transparency and Campaign Finance Comm.*, 341 Ga. App. 901 (802 SE2d 310) (2017), the superior court concluded that it lacked jurisdiction to consider the matter and denied the motion. On appeal, the Commission contends that it may seek judicial enforcement of its administrative subpoenas in accordance with the Georgia Administrative Procedure Act and that *Oxendine* is inapplicable. We agree.

2. Before we delve into our statutory analysis, we recognize that "we must afford the statutory text its 'plain and ordinary meaning,' we must view the statutory text in the context in which it appears, and we must read the statutory text in its most

2

natural and reasonable way, as an ordinary speaker of the English language would."
(Citations omitted.) *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337)
(2013). This Court "look[s] to the text of the provision in question and its context
within the larger legal framework to discern the intent of the legislature in enacting
it." (Punctuation omitted.) *Scott v. State*, 299 Ga. 568, 571 (2) (788 SE2d 468)
(2016). See also OCGA § 1-3-1 (a), (b). Where the statutory text is "clear and
unambiguous," we attribute to the statute its plain meaning, and our search for
statutory meaning generally ends. See *Deal v. Coleman*, 294 Ga. at 173 (1) (a). The
issue before us is purely legal and, thus, is reviewed de novo. See *Expedia, Inc. v.
City of Columbus*, 285 Ga. 684, 689 (4) (681 SE2d) 122 (2009).

Broadly speaking, the Georgia Administrative Procedure Act, see OCGA § 50-
13-1 et seq., "is meant to provide a procedure for administrative determination and
regulation where expressly authorized by law or otherwise required by the
Constitution or a statute of this state."[1] OCGA § 50-13-1. Among other things, the

---

[1] The Commission is an "agency" as that term is defined in the Georgia
Administrative Procedure Act. See OCGA § 50-13-2 (a). The Commission must abide
by the Act when adopting its rules and regulations, as well as when conducting
hearings into alleged violations of the Ethics in Government Act. See OCGA § 21-5-6
(a) (7) , (b) (10) (A). While the Commission's preliminary investigation need not
comply with the notice and hearing provisions of the Administrative Procedure Act,
see OCGA § 21-5-6 (b) (10) (B), nothing in the Commission's enabling act otherwise

Act describes "the procedures an agency must follow in order to adopt new rules and regulations," *Walker v. Dept. of Transp.*, 279 Ga. App. 287, 293-294 (2) (c) (630 SE2d 878) (2006), details the procedural rules and remedies relevant to agency proceedings, see *DeKalb County School Dist. v. Georgia State Bd. of Ed.*, 294 Ga. 349, 370 (4) (a) (751 SE2d 827) (2013), and provides for judicial review of both intermediate and final agency decisions, see *Federated Dept. Stores, Inc. v. Georgia Public Svc. Comm.*, 278 Ga. App. 239, 241 (1) (628 SE2d 658) (2006).

The Commission argues that it may seek judicial enforcement of its administrative subpoenas under OCGA § 50-13-13 (b).[2] This provision states as follows:

_____

limits or precludes the application of the Georgia Administrative Procedure Act here.

[2] The Commission or its staff, see OCGA § 21-5-6 (a) (4), conducts preliminary investigations into written, verified complaints alleging a violation of the Ethics in Government Act, see OCGA § 21-5-6 (b) (10) (A). The Commission's regulations provide that "[i]f it is deemed appropriate by Commission staff in the course of an investigation . . . . an Administrative Subpoena may be served to obtain relevant documents or the attendance of a witness." Ga. Comp. R. & Regs. r. 189-2-.07 (2) (a). If the preliminary investigation finds "reasonable grounds" to conclude that a violation has occurred, the Commission then issues a summons to the offending party to appear at a hearing conducted in accordance with the Georgia Administrative Procedure Act; where there are no such reasonable grounds, the complaint is provisionally dismissed. See OCGA § 21-5-6 (b) (10) (A).

In proceedings before the agency, the hearing officer, or any representative of the agency authorized to hold a hearing, if any party or an agent or employee of a party . . . neglects to produce, after having been ordered to do so, any pertinent book, paper, or document . . . the agency, hearing officer, or other representative shall have the same rights and powers given the court under Chapter 11 of Title 9, the "Georgia Civil Practice Act." If any person . . . refuses as specified in this subsection, the agency, hearing officer, or other representative may certify the facts to the superior court of the county where the offense is committed for appropriate action, including a finding of contempt.

(Emphasis supplied.) Id. In order to address the Commission's arguments, we must determine both whether the phrase "[i]n proceedings before the agency" encompasses the Commission's preliminary investigation and whether the Commission's administrative subpoena "ordered" Appellees to produce the requested materials. We address each in turn.

(a) The Georgia Administrative Procedure Act does not expressly define the phrase "proceedings before the agency,"[3] but we can use other portions of the Act to help glean the meaning of the phrase. See *GeorgiaCarry.Org, Inc. v. Atlanta Botanical Garden, Inc.*, 306 Ga. 829, 834 (3) (834 SE2d 27) (2019). A substantial

---

[3] The phrase "in proceedings before agency" is not used elsewhere in the Georgia Administrative Procedure Act or anywhere else in the Georgia Code.

portion of the Act concerns the "contested case," which refers to a "*a proceeding . . . in which the legal rights, duties, or privileges of a party are required by law to be determined *by an agency* after an opportunity for hearing." (Emphasis supplied.) OCGA § 50-13-2 (2). Appellee AFG Group d/b/a Stacey Abrams for Governor ("Appellee AFG") contends that the phrase "proceedings before the agency" is a reference to a "contested case"and urges us to conclude that OCGA § 50-13-13 (b) applies only to these more formal adjudicative proceedings. However, had the General Assembly intended that OCGA § 50-13-13 (b) apply only to contested cases, it could have expressly used that term as it did in countless other instances throughout the Act; instead, the General Assembly used the phrase "proceedings before the agency," and we must give meaning to this choice of words. See *Pandora Franchising, LLC v. Kingdom Retail Group, LLLP*, 299 Ga. 723, 728 (1) (b) (791 SE2d 786) (2016) (recognizing that "[w]here the legislature uses certain language in one part of the statute and different language in another, the Court assumes different meanings were intended" because we presume "that the legislature did not intend to enact meaningless language").

Our conclusion that the use of the phrase "proceedings before the agency" is not merely a substitute for the term "contested case" is bolstered when OCGA § 50-

6

13-13 is viewed as a whole.[4] OCGA § 50-13-13 includes three subdivisions; the General Assembly utilized the phrase "contested case" in both subsections (a) and (c), but not subsection (b). Additionally, while OCGA § 50-13-13 (b) initially uses the term "party" – which can be understood as a participant in a contested case, see OCGA § 50-13-2 (2) and (4) – subsection (b) later provides that it is applicable to "any person," not just a party.[5] More significantly, subsection (c) provides, in part, that "[s]ubsection (a) of this Code section and the other provisions of this chapter *concerning contested cases* shall not apply to any case arising in the administration of the revenue laws[.]"[6] (Emphasis supplied.) OCGA § 50-13-13 (c). While the

---

[4] Appellee AFG Group ("Appellee AFG") points out that OCGA § 50-13-13 (b) "is actually titled 'Contested cases; notice; hearing; record; powers of hearing officer.'" However, as the General Assembly has explained, "the descriptive headings or catchlines immediately preceding or within the text of the individual Code sections of this Code . . . do not constitute part of the law and shall in no manner limit or expand the construction of any Code section." OCGA § 1-1-7. See also *South v. Bank of America*, 250 Ga. App. 747, 749 (551 SE2d 55) (2001) ("[C]ontrary to South's contention, the caption of OCGA § 7-1-816, which refers to 'payment on signature of one party,' does not create a requirement that banks obtain the signature of at least one party to the account.").

[5] See OCGA § 50-13-2 (5) (defining person as "any individual, partnership, corporation, association, governmental subdivision, or public or private organization of any character other than an agency").

[6] The General Assembly established a separate set of procedures applicable to matters involving "disputes between the [D]epartment [of Revenue] and taxpayers[.]"

7

instant matter does not involve the administration of the revenue laws, subsection (c) is no less relevant here; the language of subsection (c) indicates that it is *only* subsection (a) of OCGA § 50-13-13 – along with other unidentified provisions of the Georgia Administrative Procedure Act – that specifically "concern[s] contested cases."

Having established that the Act does not plainly or immediately provide a meaning to the phrase "[i]n proceedings before the agency," we must now turn to the language itself for a solution. The word "proceedings" is defined as "the carrying on of an action or course of action," see New World Dictionary of American English College Edition 1072 (2nd ed. 1988), as "a series of activities or events; happenings," and as a "legal step or measure," see Random House Webster's Unabridged Dictionary 1542 (2nd ed. 1997). However, the word "proceedings" is not used in isolation here; instead, it refers to what is occurring "before the agency," that is, an administrative agency. The phrase "administrative proceeding" is defined as "[a] hearing, inquiry, *investigation*, or trial before an administrative agency, usu. adjudicatory in nature but sometimes quasi-legislative." Black's Law Dictionary (11th ed. 2019). Thus, while "proceedings before the agency" can be understood to

---

OCGA § 50-13A-2. See OCGA § 50-13A-1 et seq.

8

reference a more formal process – including a contested case – we agree with the Commission that the phrase can also be understood to encompass an agency's investigations.[7]

(b) Now we must delve into the second relevant portion of OCGA § 50-13-13 (b). Returning to the text of the statute, subsection (b) permits an agency to seek relief in the superior court where "any person" fails "to produce, *after having been ordered to do so*, any pertinent book, paper, or document." Id. Here, the Commission issued administrative subpoenas to Appellees in accordance with its subpoena power under OCGA § 21-5-6 (a) (5) , and we must now decide whether, for the purposes of OCGA § 50-13-13 (b), these subpoenas sufficiently "ordered" Appellees to produce the

---

[7] Appellee AFG contends that interpreting the phrase "proceedings" too broadly would permit the Commission to "compel disclosure of all manner of political information without disclosure of its reasons for doing so." However, whether the Commission may enforce its administrative subpoenas under OCGA § 50-13-13 (b) is unrelated to the scope of the Commission's subpoena authority. Indeed, OCGA § 50-13-13 (b) requires that the requested materials be "pertinent," and the Commission's own regulations provide that its administrative subpoenas are applicable "to obtain *relevant* documents." Ga. Comp. R. & Regs. r. 189-2-.07 (2) (a).

9

requested documents.[8]

When used as a noun, the word "order" is defined as "[a] command, direction, or instruction," as well as "[a] written direction or command delivered by a government official." Black's Law Dictionary (11th ed. 2019). There is little difference in the meaning when the word is used as a verb, as it is here. "Ordered" can be defined as "to give an order, direction, or command to" and "to direct to be made, supplied, or furnished." Random House Webster's Unabridged Dictionary 1363 (2nd ed. 1997). See also New World Dictionary of American English College Edition 953 (2nd ed. 1988) (defining the word "ordered" as "to give a command" or "to request that something be supplied"). As to a subpoena, it is generally understood as "[a] writ or *order* commanding a person to appear before a court or other tribunal, subject to a penalty for failing to comply." (Emphasis supplied.) Id. More specifically,

---

[8] Whether the Appellees have been "ordered" to produce the requested materials as required by OCGA § 50-13-13 (b) involves statutory interpretation and, thus, is a legal question that must be addressed to fully resolve this appeal, see, e.g., *Expedia*, 285 Ga. at 689 (4). Our decision is expressly limited to whether the Commission has the authority to seek enforcement of the relevant subpoenas in the superior court; the propriety of the Commission's subpoenas – including questions of pertinence and relevance – and whether Appellees have, in fact, "neglected" to comply with that demand are fact questions that the trial court must first consider. We offer no opinion as to the merits of the Commission's motion to compel or to any possible defenses the Appellees may raise in response.

an administrative subpoena is defined as a "subpoena issued by an administrative agency to compel an individual to provide information to the agency." Black's Law Dictionary (11th ed. 2019).

We are satisfied that the reference in OCGA § 50-13-13 (b) to a person or party being "ordered" to produce any "book, paper, or document" is a reference to a subpoena for the production of things. As referenced above, administrative subpoenas – like the ones issued here – can be understood as agency orders compelling the production of information or documents. Any other reading would require that an agency, as a prerequisite to seeking relief in the superior court, issue some unspecified formal order to compel compliance with its own subpoena after a person or party has *already* neglected to comply with an agency's demand for the production of materials; the plain language of subsection (b) does not hint at such a fruitless endeavor, and this interpretation would be unreasonable in light of our conclusion that OCGA § 50-13-13 (b) is applicable to agency "proceedings" occurring outside

11

the strictures of formal adjudicative hearings.[9]

The subpoenas issued here "commanded" and "compelled" the respective Appellees to produce various communications and records; we conclude that, for the purpose of OCGA § 50-13-13 (b), these subpoenas sufficiently "ordered" the respective Appellees to produce the requested materials, the alleged noncompliance with which would allow the for the Commission to seek enforcement in the superior court.

3. Given our conclusion that OCGA § 50-13-13 (b) affords the Commission authority to seek enforcement of its administrative subpoenas in the superior court, we need not address whether the Commission also has this authority under OCGA § 25-5-6 (a) (5). Likewise, we need not address the trial court's reliance on *Oxendine*, which was decided under a separate provision of Georgia Administrative Procedure Act. See *Oxendine*, 341 Ga. App. at 903-904 (2) (concluding that the trial court did

---

[9] It does not follow, as Appellee AFG argues, that permitting the Commission to utilize OCGA § 50-13-13 (b) to enforce its administrative subpoenas somehow deprives the subpoenaed party of due process. The person or party to whom the administrative subpoena has been issued has the right to move the Commission to quash that subpoena, see Ga. Comp. R. & Regs. r. 189-2-.07 (2) (b) and, inevitably, would be entitled to notice and an opportunity to be heard in any subsequent proceeding in the superior court.

not err in concluding that, under OCGA § 50-13-19 (a), it did not have jurisdiction to consider a petitioner's motions to dismiss and to sever).

*Judgment reversed and case remanded. Barnes, P. J., and Gobeil, J., concur.*