**THIRD DIVISION
DOYLE, P. J.,
HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 28, 2024**

# In the Court of Appeals of Georgia

A24A0902. GEORGIA DEPARTMENT OF TRANSPORTATION v. JACKSON.

WATKINS, Judge.

The Georgia Department of Transportation ("GDOT") brings this interlocutory appeal from the denial of its motion to dismiss a lawsuit filed by Theresa Jackson, in which she claimed she was injured in a motorcycle accident caused by negligent maintenance of a portion of Interstate 20. GDOT alleges that the trial court did not have subject matter jurisdiction over Jackson's suit due to her failure to strictly comply with the Georgia Tort Claims Act's ante litem notice requirements. We agree, and, therefore, reverse the trial court's denial of the motion to dismiss.

"We review de novo a trial court's ruling on a motion to dismiss based on sovereign immunity grounds, which is a matter of law. Factual findings are sustained

if there is evidence supporting them, and the burden of proof is on the party seeking the waiver of immunity."[1] So viewed, the record shows that Jackson alleges that she was injured when she was driving on an exit ramp from Interstate 20 and drove over a dangerous pothole in the "gore (median area) between the highway and the exit ramp" which was obscured by water.

Following this accident, Jackson sent an ante litem notice to GDOT and to the Director of the Risk Management Services Division of the Georgia Department of Administrative Services (the "DOAS"). The ante litem letter indicates that it was sent to both recipients via certified mail return receipt requested and sent via e-mail to DOAS.

Jackson filed suit against GDOT. GDOT filed a motion to dismiss, arguing that Jackson failed to comply with the Georgia Tort Claims Act, OCGA § 50-21-26 (a), because her complaint did not attach a delivery receipt for the ante litem notice mailed to DOAS. Jackson thus filed an amended complaint, attaching a printout from stamps.com showing that she paid postage for certified service return receipt requested for the ante litem notice letters, an affidavit from the legal assistant who

---

[1] (Citation omitted.) *Douglas v. Dept. of Juvenile Justice*, 349 Ga. App. 10, 10-11 (825 SE2d 395) (2019).

placed the notice letters in "a blue USPS collection box[,]" and an e-mail from DOAS acknowledging receipt of the ante litem notice. The trial court denied the motion to dismiss, finding that Jackson had complied with the Georgia Tort Claims Act. It further noted that DOAS was served (by personal service) with notice of Jackson's action in June 2023, after the suit was filed. GDOT filed a motion for reconsideration.

In light of GDOT's motion, the trial court ordered Jackson to file with the court all tracking information that she had for the notice and ordered GDOT to submit testimony about whether DOAS had received the ante litem notice by mail. In response to this directive, Jackson submitted evidence that no tracking information was available — the USPS website showed the package as "Label Created, not yet in system." GDOT, in turn, submitted an affidavit averring that although DOAS had received a copy of Jackson's ante litem notice by e-mail, the notice had not been received via certified mail.

The trial court denied GDOT's motion for reconsideration and certified its order for immediate review, and this Court granted GDOT's application for interlocutory review.

1. GDOT contends that the trial court erred in denying the motion to dismiss because Jackson did not comply with the Georgia Tort Claims Act's requirements. We agree.

The Georgia Constitution provides:

The General Assembly may waive the [S]tate's sovereign immunity from suit by enacting a State Tort Claims Act, in which the General Assembly may provide by law for procedures for the making, handling, and disposition of actions or claims against the [S]tate and its departments, agencies, officers, and employees, upon such terms and subject to such conditions and limitations as the General Assembly may provide.

. . .

Except as specifically provided in this Paragraph, sovereign immunity extends to the [S]tate and all of its departments and agencies. The sovereign immunity of the [S]tate and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.[2]

In adopting the Georgia Tort Claims Act,

---

[2] Ga. Const. of 1983, Art. I, Sec. 2, Par. IX (a), (e).

4

[t]he General Assembly recognize[d] the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity. On the other hand, the General Assembly recognize[d] that, while private entrepreneurs voluntarily choose the ambit of their activity and can thereby exert some control over their exposure to liability, [S]tate government does not have the same flexibility. In acting for the public good and in responding to public need, [S]tate government must provide a broad range of services and perform a broad range of functions throughout the entire [S]tate, regardless of how much exposure to liability may be involved. The exposure of the [S]tate treasury to tort liability must therefore be limited. State government should not have the duty to do everything that might be done. Consequently, it [was] declared to be the public policy of this [S]tate that the [S]tate shall only be liable in tort actions within the limitations of [the Tort Claims Act] and in accordance with the fair and uniform principles established in [the Tort Claims Act].[3]

Among the requirements to bring suit against a State agency pursuant to the Georgia Tort Claims Act, a party must first provide ante litem notice. Specifically, the law establishes that:

No person, firm, or corporation having a tort claim against the [S]tate under this article shall bring any action against the [S]tate upon such claim without first giving notice of the claim as follows:

---

[3] OCGA § 50-21-21.

(1) Notice of a claim shall be given in writing within 12 months of the date the loss was discovered or should have been discovered . . . ;

(2) Notice of a claim shall be given in writing and *shall be mailed by certified mail or statutory overnight delivery, return receipt requested*, or delivered personally to and a receipt obtained from the Risk Management Division of the Department of Administrative Services . . . ;

(3) No action against the [S]tate under this article shall be commenced and the courts shall have no jurisdiction thereof unless and until a written notice of claim has been timely presented to the [S]tate as provided in this subsection;

(4) Any complaint filed pursuant to this article must have a copy of the notice of claim presented to the Department of Administrative Services *together with the certified mail or statutory overnight delivery receipt or receipt for other delivery attached as exhibits. . . .*[4]

Further, it is clear that the State cannot waive subject matter jurisdiction. Subject-matter jurisdiction is established by our laws, and there is nothing parties to a suit can do to give a court jurisdiction over a matter that has not been conferred by law. Thus, failure to give the

---

[4] (Emphasis supplied.) OCGA § 50-21-26 (a).

requisite notice routinely results in dismissals for want of subject matter jurisdiction.[5]

"[W]hile courts should not apply a hyper-technical construction to the [Georgia Tort Claims Act], strict compliance with the ante litem notice requirements is necessary, and substantial compliance is insufficient."[6] "Even when the [S]tate agency has actual notice, a claimant is not excused from strictly complying with the notice requirements."[7]

Here, Jackson contends that her ante litem notice was "mailed by certified mail or statutory overnight delivery, return receipt requested[,]" and thus complied with the Georgia Tort Claims Act.

> When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we

---

[5] (Citations and punctuation omitted.) *Dempsey v. Board of Regents of Univ. System of Ga.*, 256 Ga. App. 291, 292 (568 SE2d 154) (2002).

[6] (Citation and punctuation omitted.) *Douglas*, 349 Ga. App. at 12 (1).

[7] *Callaham v. Georgia Ports Auth.*, 337 Ga. App. 120, 123 (786 SE2d 505) (2016).

must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.[8]

Moreover, "[w]hen interpreting a statute, a presumption exists that the legislature did not intend to enact meaningless language."[9]

Applying such principles of construction, we must conclude that Jackson's complaint did not comply with the Georgia Tort Claims Act because the documents she attached to her complaint pursuant to subsection (a) (4) do not demonstrate compliance with subsection (a) (2). Simply put, the documents submitted by Jackson fail to even establish that the ante litem notice successfully reached the United States Postal Service.

Given the possibility here of the USPS misplacing Jackson's certified mail,

we certainly empathize with [Jackson's] unfortunate situation[; however,] sovereign immunity is a harsh doctrine, not an equitable one. Indeed, it is just the opposite of equity. Nevertheless, it is a constitutionally recognized doctrine, and the constitution expressly provides that immunity for tort claims can be waived only by a legislative

---

[8] (Citations and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013).

[9] (Citation and punctuation omitted.) *Pandora Franchising v. Kingdom Retail Group*, 299 Ga. 723, 728 (1) (b) (791 SE2d 786) (2016).

act specifically providing for such waiver and setting forth the extent thereof.[10]

We do note, however, that a party can avoid such a harsh result by timely re-transmitting an ante litem notice in a statutorily permissible way should she discover any problems.

Accordingly, the trial court erred in finding that it had subject matter jurisdiction and denying the motion to dismiss.

2. GDOT argues that the trial court's alternate basis for denying the motion to dismiss,[11] based on DOAS being personally served with Jackson's lawsuit, was error. We agree.

The Georgia Tort Claims Act provides that

[n]o action may be commenced under this article following presentation of a notice of claim until either the Department of Administrative Services has denied the claim or more than 90 days have elapsed after the

---

[10] (Citation and punctuation omitted.) *Board of Regents of Univ. System of Ga. v. Brooks*, 324 Ga. App. 15, 19 (1) (749 SE2d 23) (2013).

[11] It is unclear from the language of the trial court's order if it was simply noting that DOAS had been personally served with the lawsuit, or if it was an alternate basis for denying GDOT's motion.

presentation of the notice of claim without action by the Department of Administrative Services, whichever occurs first.[12]

Accordingly, personal service on DOAS of a lawsuit cannot satisfy the notice requirements of OCGA § 50-21-26 (a) because the notice must be received prior to a lawsuit being filed. To the extent that the trial court denied the motion to dismiss on this basis, such was error.

*Judgment reversed. Doyle, P. J. concurs, and Hodges, J., concurs fully and specially.*

---

[12] OCGA § 50-21-26 (b).

In the Court of Appeals of Georgia

A24A0902.  GEORGIA  DEPARTMENT  OF
TRANSPORTATION v. JACKSON.

HODGES, Judge, concurring fully and specially.

I concur fully with the majority that the trial court's order denying the GDOT's motion to dismiss must be reversed because Jackson failed to attach "the certified mail . . . receipt" for her ante litem notice as an exhibit to her complaint — to show that she mailed the ante litem notice to the GDOT — as required by OCGA § 50-21-26 (a) (4). I write separately only to add additional context to the need for compliance when a litigant chooses to serve an ante litem notice by certified mail.

As is relevant to this case, OCGA § 50-21-26 (a) (4) provides that "[a]ny complaint filed pursuant to this article must have a copy of the notice of claim presented to the Department of Administrative Services together with the certified mail . . . receipt . . . attached as exhibits." The Domestic Mail Manual of the United States Post Office, as incorporated in the Code of Federal Regulations, see 39 CFR 111.1, describes "certified mail" as follows: "Certified Mail provides the sender with *a mailing receipt* and, upon request, electronic verification that an article was delivered or that a delivery attempt was made." (Emphasis supplied.) Sec. 500, Par. 3.1.1, Mailing Standards of the United States Postal Service Domestic Mail Manual, (available at https://pe.usps.com/text/dmm300/503.htm#ep1063590 [last visited Sept. 24, 2024]).[1] In addition, "Certified Mail must bear the barcoded green label part of the Form 3800 . . ., or a non-barcoded green Label 3800-N when a mailer-generated shipping label bearing an IMpb, under 204.2.0, is also affixed on the same mailpiece." Id. at Par. 3.2.1. "It is [therefore] evident that certified mail does two things that first-class mail does not: certified mail provides the sender with *a mailing receipt* and

---

[1] The certified mail receipt showing mailing is therefore different from the return receipt showing actual delivery. See Sec. 500, Par. 3.1.1 ("Customers may obtain a delivery record by purchasing a return receipt (6.0) at the time of mailing.").

2

a record of delivery is maintained at the post office of address." (Emphasis supplied.) *Electronic Data Systems v. Township of Flint*, 656 NW2d 215, 221 (Mich. App. 2002).

Here, the record shows a receipt from stamps.com purporting to show the postage purchased to send the ante litem notices to the DOAS and the GDOT by certified mail, return receipt requested, as well as testimony from Jackson's counsel's administrative assistant that she "prepared envelopes and paid for postage" for the ante litem notices and that she "personally deposit[ed]" the notices[2] in "a blue USPS collection box."[3] What is lacking is the certified mail receipt, issued by the United States Postal Service, demonstrating proof of mailing. Because we are required to strictly construe OCGA § 50-21-26 (a) (4), and because the mailing receipt is absent, I agree with the majority that Jackson failed to demonstrate compliance with OCGA § 50-21-26 and that the trial court's order denying GDOT's motion to dismiss must be reversed.

---

[2] The record also contains an e-mail from the DOAS acknowledging receipt of Jackson's ante litem notice. However, I do not reach the effect, if any, of that e-mail.

[3] In addition, the record contains tracking information from the USPS which may be read to suggest that the ante litem notice was never *collected* by the USPS. That is a separate inquiry from whether Jackson's counsel supplied sufficient proof of mailing the ante litem notice as required by OCGA § 50-21-26 (a) (2).

In short, because Jackson failed to include "the certified mail . . . receipt" as proper evidence of mailing, she did not comply with OCGA § 50-21-26 (a) (4) and the trial court's order denying GDOT's motion to dismiss must be reversed. Therefore, I concur fully and specially.